UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM SCOTT,<br>    a/k/a "Ill Will,"<br><br>    Defendant. | **21 Cr. 429 (AT)** |

**GOVERNMENT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Alexandra Rothman
Assistant United States Attorney
    *Of Counsel*

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant William Scott's motion to suppress eyewitness identification testimony.  The identification in this case was not unduly suggestive and, in any event, was clearly independently reliable because it was a confirmatory identification after the witness had already verbally identified the perpetrator by nickname as a person known to the witness.  As there are no disputed material facts, the Court need not hold a fact hearing.  The motion should be denied.

## FACTUAL BACKGROUND

Indictment 21 Cr. 429 (AT) charges the defendant with one count of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).  (Dkt. 1).  This charge arises out of a shooting that occurred on June 23, 2020, at approximately 6:15 p.m. in the vicinity of East 183rd Street and Prospect Avenue in the Bronx, New York, in which one individual (the "Victim") was shot twice (the "Shooting").  Both an eyewitness to the Shooting (the "Witness") and the Victim identified the defendant as the shooter.  The Government expects that the evidence at trial will reflect the following facts:

On June 23, 2020, a verbal altercation took place between the defendant and others outside of an apartment building on East 183rd Street (the "Building").  Later that day, as captured on surveillance video, the defendant and a young girl exited the Building and walked towards a bodega on the corner of East 183rd Street and Prospect Avenue.  (Gov't Ex. A, 4:45-5:10).  The defendant was wearing a white t-shirt and red shorts.  Although the defendant's face is not visible in this video, surveillance video taken from inside of the Building immediately before clearly shows the defendant's face as he and the same young girl (i) waited for the elevator to go downstairs, (Gov't Ex. B-1, at 00:13-1:06), and (ii) walked from the elevator to the exit, (Gov't Ex. B-2, 00:08-00:16).

Meanwhile, the Victim and Witness, among others, were standing outside of the Building. (Gov't Ex. A, 5:20-6:10).  The Victim and others followed the defendant to the bodega. (*Id.* at 5:20-6:10).  Moments later, the Victim and others ran back down East 183rd Street as the defendant followed behind holding a firearm.  (*Id.* at 6:42:7:00).  The defendant shot twice at the Victim and threatened to shoot again before the Witness approached the defendant and spoke with him.  (*Id.* at 7:00-7:18).  The defendant then left the scene.  (*Id.* at 7:18-7:25).

After the Shooting, the Victim and the Witness went to the hospital.  While there, a detective with the New York City Police Department ("Detective-1") spoke with the Witness.  The Witness stated, in sum and substance and among other things, that the shooter's name was "Ill Will," that "Ill Will" was a neighbor who rented a room in the Building, and that the Witness saw "Ill Will" on a daily basis.  As Detective-1 did not know the identity of "Ill Will," he showed the Witness two photographs of individuals who had recently committed shootings in the area.  (*See* Def. Exs. C, D).  The Witness said neither was the shooter.  Detective-1 also showed the Witness a photograph of the Victim, and the Witness confirmed that was the victim, not the shooter. Detective-1 then learned from a colleague that "Ill Will" was the street name of the defendant.  At that point, Detective-1 showed the Witness a photograph of the defendant, (*see* Def. Ex. B), and the Witness identified the defendant as the shooter.  Detective-1 retrieved a printed photograph of the defendant and showed it to the Witness.  The Witness confirmed that was the shooter and signed the photograph.  (*See* Gov't Ex. C).

The Victim also identified the defendant as the shooter shortly after the Shooting.  While at the hospital, a second NYPD detective ("Detective-2") interviewed the Victim.  The Victim stated, in sum and substance and among other things, that "Ill Will," the shooter, was his neighbor, who he sees on a daily basis, and that "Ill Will" was wearing a white shirt and red shorts.

Detective-2 showed the Victim a printed photograph of the defendant.  The Victim confirmed that was the shooter and signed the photograph.  (*See* Gov't Ex. D).[1]

## DISCUSSION

### A.  Applicable Law

As a general matter, the Constitution "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit."  *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012).  Eyewitness identifications should therefore be excluded only where "improper police conduct" occurred that was "so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Id.* at 238; *see Manson v. Brathwaite*, 432 U.S. 98, 113 (1977); *Simmons v. United States*, 390 U.S. 377, 384-85 (1968).  Otherwise, the "Draconian sanction" of exclusion may not be considered, and the reliability of the identification evidence is for the jury to weigh. *Perry*, 565 U.S. at 239.

Federal courts follow a two-step analysis in ruling on the admissibility of identification evidence.  *Perry*, 565 U.S. at 238-40; *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009).  First, the defendant must show that the identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law."  *United States v. DiTommaso*, 817 F.2d 201, 213 (2d Cir. 1987); *see Raheem v. Kelly*, 257 F.3d 122, 134

---

[1] From conferring with defense counsel and re-reviewing the discovery produced in this case, the Government recognizes that it may have been unclear that the Victim *also* identified that defendant as the shooter.  The Government understands that counsel may wish to supplement her motion to challenge the Victim's identification as well.  The Government has no objection, and would only request permission from the Court to file a brief sur-reply if necessary.

3

(2d Cir. 2001). This is a high threshold to meet, as the defendant must show that, under the totality of the circumstances, there is "a very substantial likelihood of irreparable misidentification." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If the defendant cannot make such a showing, "the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification. In that circumstance, any question as to the reliability of the witness's identification goes to the weight of the evidence, not its admissibility." *Id.* In such circumstances, the court need not reach the second step of the analysis. *See*, *e.g.*, *Sims v. Sullivan*, 867 F.2d 142, 145 (2d Cir. 1989); *Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986) ("[I]f the procedures were not impermissibly suggestive, independent reliability is not a constitutionally required condition of admissibility."). Indeed, where there is no "improper police conduct" in the identification procedure, the Due Process Clause does not regulate admissibility at all, and determinations concerning reliability must be left to the jury. *Perry*, 565 U.S. at 238-40.

Second, an unduly suggestive identification procedure does not alone require suppression of the identification evidence. *See Brathwaite*, 432 U.S. at 110-14. Instead, the court must then determine whether the identification evidence is nevertheless "independently reliable" based on the totality of the circumstances. *Brisco*, 565 F.3d at 89; *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991) ("Even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability."); *see Brathwaite*, 432 U.S. at 114 ("[R]eliability is the linchpin in determining the admissibility of identification testimony."). Among the factors to be considered are: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness

4

at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).   No single factor is dispositive.   *United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir.1992).

Similarly, even when a pretrial identification is found to be unduly suggestive, "the law is clear that an eyewitness may nonetheless be allowed to make an in-court identification if the eyewitness has an independently reliable basis upon which to make the identification." *United States v. Reed*, No. 11 Cr. 487 (RJS), 2012 WL 2053758, at *6 (S.D.N.Y. June 6, 2012) (citing *United States v. Lumpkin*, 192 F.3d 280, 288 (2d Cir. 1999)); *see also United States v. Salameh*, 152 F.3d 88, 126 (2d Cir. 1998) ("A witness who identified a defendant prior to trial may make an in-court identification of the defendant if . . . the in-court identification is independently reliable, even though the pretrial identification was unduly suggestive."). The *Neil v. Biggers* factors also guide the inquiry into the independent reliability of an in-court identification.

**B.  The Defendant's Motion to Suppress the Witness's Identification of the Defendant Should Be Denied**

There is no basis to suppress the Witness's June 23, 2020 identification of the defendant as the shooter, and the Witness should similarly be permitted to make an in-court identification of the defendant.

First, the NYPD's identification procedure was not unduly suggestive because it was a "confirmatory identification" of a person that the Witness had already identified by nickname as someone known to the Witness.  The use of a single photograph in these circumstances is common practice, and it is routinely upheld by both state and federal courts.  It does not constitute the "improper police conduct" that creates a "substantial likelihood of misidentification" needed to establish a basis for suppression. *Perry*, 565 U.S. at 239. *See, e.g.*, *United States v. Hardy*,  No. 10 Cr. 1123 (JSR), 2011 WL 7782582 (S.D.N.Y. Jan. 25, 2011) ("Displaying a confirmatory

5

photograph of a person the witness has indicated that he already knows is perfectly acceptable."); *Gilbert v. Sup't of Collins Corr. Fac*., No. 03 Civ. 3866 (LBS), 2004 WL 287683, at *8 (S.D.N.Y. Feb. 11, 2004) (upholding confirmatory identification following street canvass on the grounds that "police suggestiveness does not require suppression of an identification if the witness was not thereby influenced, as, for example, when the witness's identification was already positive." (quoting *Jarrett v. Headley*, 802 F.2d 34, 41-42 (2d Cir. 1986))); *see also Watson v. City of N.Y.*, 289 F. Supp. 3d 398, 408-09 (E.D.N.Y. 2018) (finding single photo identification not unnecessarily suggestive where victim identified defendant immediately after incident and claimed to know him previously, such that victim's photo identification was "merely confirming for police" that defendant was the person victim had identified); *United States v. Ramos-Cruz*, No. 11 Cr. 151-A, 2014 WL 9931353, at *2 (W.D.N.Y. July 15, 2014) (upholding single photo identification where identification was not one of "an unknown person, [but] rather, it was a confirmatory identification," where witness purchased heroin from defendant in the past); *Franco v. Lee*, No. 12 Civ. 1210 (SJF), 2013 WL 704655, at *10 (E.D.N.Y. Feb. 26, 2013) ("In cases . . . in which the protagonists are known to one another, suggestiveness is not a concern and the identification is merely confirmatory."); *United States v. Donald*, No. 07 Cr. 6208L, 2009 WL 960209, at *1 (W.D.N.Y. Apr. 7, 2009) (denying motion to suppress prior photo identification because the witness knew the defendant from the neighborhood and had face-to-face dealings with him, making the identification a proper "confirmatory identification"); *Stallings v. Wood*, No. 04 Civ. 4714 (RLM), 2006 WL 842380, *11 (E.D.N.Y. Mar. 27, 2006) (collecting cases).[2]  When courts

---

[2] Courts have also applied the same rationale at the second step of the analysis, concluding that regardless of the potentially suggestive nature of an identification procedure, where the witness has identified the suspect as a person known to him, sufficient independent reliability exists to permit introduction of the identification evidence.  *See, e.g.*, *Wiggins v. Greiner*, 132 F. App'x

have "condemned the exhibition of a single photograph as a suggestive practice," they have done

so in circumstances where there is a "concern that a single photograph may improperly influence

a witness's identification of an unknown perpetrator based solely on the witness's observation of

the crime," which concerns do not exist when the witness has already stated that the perpetrator is

a person known to him. *United States v. Harris*, No. 12 Cr. 65, 2018 WL 1517216, at *18 (D. Vt.

Feb. 27, 2018).

    Here, prior to the identification procedure, the Witness clearly explained that the Witness

knew the person who had shot the Victim: the Witness identified the defendant by nickname as

someone with whom the Witness was familiar, described how the defendant was the Witness's

neighbor and rented a room in the Building, and further described how the Witness saw the

defendant on a daily basis. It was therefore clear that the Witness was describing a particular

person that was known to the Witness, fully justifying Detective-1's decision to seek confirmation

that the person "Ill Will," to whom the Witness was referring, was the defendant. *See, e.g.*, *Watson*,

289 F. Supp. 3d at 408-09 (finding single photo identification not unnecessarily suggestive where

victim identified defendant immediately after incident and claimed to know him previously, such

that victim's photo identification was "merely confirming for police" that defendant was the person

---

861, 865 (2d Cir. 2005) (observing that witness's "independent ability to identify [the defendant] was demonstrated in an even more convincing manner [than providing a detailed physical description]: he provided his name."); *United States v. Sosa*, No. 17 Cr. 580 (NRB), 2018 WL 4659472 (S.D.N.Y. Sept. 12, 2018) (finding that witness's preexisting "relationship[] with the defendant, as well as [his] opportunity to witness the defendant's actions in furtherance of the alleged criminal activity, provide sufficient independent bases for reliability" where witness "informed police that he has known the defendant for over a year and had engaged in a fight with the defendant days prior to the shooting"); *United States v. Estupinan-Jamarillo*, No. 08 Cr. 320 (JFK), 2009 WL 3049618, at *2 (S.D.N.Y. Sept. 23, 2009) (holding that witness's "identification of Defendant bears a hallmark of reliability: [the witness] has known Defendant since childhood and is therefore unlikely to have identified him mistakenly.").

victim had identified).  There is simply no reason to believe that the pretrial identification of the defendant constitutes "improper police conduct" that was "so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *See Perry*, 565 U.S. at 238. The motion to suppress should be denied on this basis, and the identification should be admitted at trial, where the defendant will have a full opportunity to contest the persuasiveness of that evidence through cross-examination and attorney argument.  *See Maldonado-Rivera*, 922 F.2d at 973 (where there has been no showing of suggestiveness, "any question as to the reliability of the [identification] goes to the weight of the evidence, not its admissibility").

Even if showing the Witness the defendant's photograph was impermissibly suggestive— which it was not—the Witness's identification had clear independent reliability because the Witness stated that the Witness was familiar with the defendant from daily interactions in the Building.  For example, in *Wiggins v. Greiner*, the Second Circuit declined to address a disputed question about a confirmatory identification's suggestiveness because the independent basis for the in-court identification was so clear.  *See Wiggins*, 132 F. App'x at 864-66 (witness saw defendant at distance of 50 feet under "street light illumination" but was familiar with defendant from seeing him previously in neighborhood); *accord Lumpkin*, 192 F.3d at 288 (officers' in-court identifications reliable where officers had unobstructed views of the defendant selling narcotics on two occasions, one of which was during daylight at close range); *United States v. Crumble*, No. 18 Cr. 32 (ARR), 2018 WL 1737642, at *2 (E.D.N.Y. Apr. 11, 2018) (collecting cases finding that "in-court identification is [] admissible, despite an improper pre-trial identification procedure, if the witness is familiar with the defendant prior to the incident," or alternatively, if "if a witness gets a good look at the defendant during the course of a crime"); *Harris*, 2018 WL 1517216, at *3 (finding in-court identification to be independently reliable where witness had "sufficient

familiarity" with defendant, had an extended interaction with the defendant, and though he could not provide a description, did identify defendant by name); *Reed*, 2012 WL 2053758, at *5 (noting that a "witness's familiarity with a suspect may establish that the identification . . . is independently reliable").

In any event, the other *Neil v. Biggers* factors in this case also weigh in favor of a finding of independent reliability. During the Shooting, the Witness had ample opportunity to view the defendant: the Witness was present when the defendant first exited the Building, was present when the defendant shot the Victim in front of the Building in broad daylight, and was inches away from the defendant, face-to-face with him, when the Witness confronted him. The Witness also expressed no hesitation or uncertainty with the identification. And the identification occurred almost immediately after the crime. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 126-27 (2d Cir. 1998) (finding sufficient independent reliability where witness had spoken with defendants while pumping gas for them, accurately described them to law enforcement without equivocation, and had done so shortly after the crime); *United States v. Wong*, 40 F.3d 1347, 1360 (2d Cir. 1994) (finding sufficient independent reliability even where ten-month gap separated crime and identification, where witness had had clear opportunity to observe gunman for two or three seconds before ducking under table out of fear of being shot). Considering the totality of these circumstances, it is plain that the Witness's identification of the defendant is sufficiently independently reliable to permit the jury to decide its persuasiveness regardless of any alleged suggestiveness. *See Perry*, 565 U.S. at 237. Admission of this evidence would not violate the defendant's constitutional right to due process.

The defendant's arguments to the contrary are unavailing. First, the defendant claims that the other photographs shown to the Witness "look nothing like Mr. Scott." (Def. Br. 2). That may

be true, but it is irrelevant because the Witness did not identify the shooter based on physical attributes. Instead, the Witness identified that shooter by nickname—"Ill Will"—and thus, the NYPD's pulling of other photographs was a permissible attempt to identify "Ill Will." Second, the defendant claims that the Government has not provided information regarding the manner in which the procedure was conducted, including the order in which the photographs were shown. However, this memorandum of law contains the Government's proffer of facts regarding the identification procedure, including the order in which the photographs were displayed.

Along similar lines, the defendant's arguments calling into question the independent reliability of an in-court identification should be rejected. As set forth above, the Witness stated that "Ill Will" was the Witness's neighbor and that the Witness saw him on a daily basis. In addition, as explained above, the Witness was present for the Shooting, which occurred in broad daylight, and physically confronted the defendant before the defendant left the scene. Thus, the Witness had a sufficient opportunity to observe the defendant.

In sum, there is no basis to suppress either the Witness's pretrial identification of the defendant or an expected in-court identification.[3]

## C. A Fact Hearing is Not Required

"A defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact." *United States v. Noble*, No. 07 Cr. 284, (RJS), 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008) (citing *United States v. Pena*, 961 F.2d

---

[3] For similar reasons, there is no basis to suppress the Victim's pretrial identification of the defendant or an expected in-court identification of the defendant. Like the Witness's identification, the Victim's identification was a confirmatory identification after the Victim had already verbally identified the perpetrator by nickname and stated his familiarity with the defendant. Thus, this identification should also be permitted.

333, 339 (2d Cir. 1992)).  If the moving papers do not create a genuine dispute as to any material fact, the court can decide the matter on the factual record established by the papers.  *See United States v. Caming*, 968 F.2d 232, 236 (2d Cir. 1992); *United States v. Martinez*, 992 F. Supp. 2d 322, 325-26 (S.D.N.Y. 2014).

In this case, there should be no disputed facts regarding the events in question.  Although the defendant's brief lists several questions regarding the events leading up to the identification, the Government has proffered answers to these questions.  The record before the Court makes plain that the identification evidence at issue in the case is proper and admissible.  In these circumstances, the Court should review the exhibits submitted by both parties and deny the motion without the need for live witness testimony.

## CONCLUSION

For the reasons set forth above, the defendant's motion to suppress the Witness's prior identification of the defendant and to prevent the Witness from making an in-court identification of the defendant should be denied without a hearing.  Moreover, to the extent the defendant moves to suppress the Victim's identification, that motion should be denied for similar reasons.

Dated: New York, New York
       July 27, 2021

                                        Respectfully submitted,

                                        AUDREY STRAUSS
                                        United States Attorney for the
                                        Southern District of New York


                              By:  _____
                                        Alexandra Rothman
                                        Assistant United States Attorney
                                        Tel.: 212-637-2580