# COLSON LAW

Colson Law PLLC
80 Broad Street, 19th Floor
New York, NY 10004
(212) 257-6455
www.colsonlaw.com

August 3, 2021

By ECF

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

Re:   *United States v. William Scott,* 21 Cr. 429

Dear Judge Torres:

Mr. Scott, age 43, is charged in a one-count indictment with being a felon in possession of ammunition, to wit, three .380 caliber shell casings. He has been detained since his arrest on July 7, 2020. He is currently housed at the MDC, but he spent much of the pandemic on lockdown at the MCC where he was diagnosed with COVID-19 and subsequently suffered from kidney stones and migraine headaches.

In late June 2021, this Court dismissed the indictment against Mr. Scott on the ground that the government violated his Fifth Amendment right to a race-neutral jury selection process. He was re-indicted the same day and arraigned on a new indictment last month. His trial is likely to occur in late 2021 or early 2022. In the meantime, I write to respectfully request that the Court release Mr. Scott on a $100,000 bond to be co-signed by three financially responsible people, and to include the following conditions: (1) strict pretrial supervision, (2) home confinement with electronic monitoring, (3) drug treatment, and (4) travel restrictions.

Should the Court agree to grant bail, Mr. Scott plans to live with his long-term girlfriend, Erica Torres and her two children, ages 11 and 17, at her apartment on Crotona Boulevard in the Bronx. Ms. Torres was a home health aide for her father until his death last month. She intends to begin work as a school bus monitor in the fall. Mr. Scott's mother Sharon Boone, twin sister Tameka Scott, and uncle Gerald Boone have each agreed to sign the bond. Ms. Boone and Ms. Scott both live in Jacksonville, Florida where Ms. Boone manages a public school cafeteria, and Ms. Scott works at Belk department store. Mr. Boone is a retired MTA conductor and lives in the Bronx.

**Applicable Law**

There is a "fundamental tradition in this country … that one charged with a crime is not, in ordinary circumstances, imprisoned until after a judgment of guilt." *Bandy v. United States*, 81 S.Ct. 197, 197 (1960). Pretrial release "permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (citation omitted). Thus, "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In keeping with this tradition, the constitutional and statutory framework for bail favors release. The Eighth Amendment to the U.S. Constitution prohibits excessive bail. U.S. Const. amend. VIII ("[e]xcessive bail shall not be required"). In addition, the Bail Reform Act requires courts to release a defendant prior to trial on the "least restrictive" conditions that will reasonably assure his appearance in court and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). In determining the conditions of release, courts must consider: (1) the nature and circumstances of the crime charged; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g).

**Analysis**

The above conditions will reasonably assure Mr. Scott's appearance in court and the safety of the community.

Mr. Scott has strong ties to New York. He is a lifelong resident of the Bronx and has multiple family members in the New York area, including his uncle, girlfriend and two children. His four-year-old son lives with an aunt in Connecticut, and his eight-year-old daughter lives with her mother in the Bronx.

Mr. Scott has not missed a court appearance since age 21 and has a history of compliance with federal pretrial supervision. He has no ties to a foreign country and has not left the United States since 2012, when he took a one-week cruise in the Caribbean.

Prior to his arrest, Mr. Scott worked as a parking attendant for No Parking Today and as a flagger for Con Edison. He lost his job at the parking garage at the start of the pandemic but believes he will be able to return to work as a flagger upon his release.

Mr. Scott does not have a history of serious felony convictions. The only recent felony on his record is a state-level drug case from 2017. He accepted responsibility for his offense and received a one-year term of incarceration, following which he successfully completed one year of parole. In 1998, when Mr. Scott was 20, he was convicted of possessing contraband in prison and also served one year. His remaining convictions are all misdemeanors, dating back to his teens and twenties. He also has an open attempted murder case in New York Supreme Court that he intends to fight. The victim, who is in prison for gun possession, recently wrote a letter to Mr. Scott's attorney stating that Mr. Scott was not involved.

To be sure, the instant allegations are serious. The government alleges that Mr. Scott shot a man in the leg after they argued about a pet dog. While the shooting was captured on video, the incident was brief and the perpetrator's face is not visible. The government claims that Mr. Scott can be identified by his clothing, but there are two men on the street with similar outfits. The remaining evidence consists of two single-photo identifications made by the victim and an eyewitness, which are the subject of a pending motion to suppress. As stated above, Mr. Scott intends to seek a trial. Continuing to detain him now based on untested allegations of criminal conduct would hamper his ability to prepare his defense and would be wholly incongruous with the presumption of innocence. *See* 18 U.S.C. § 3142(j) ("[n]othing in this section shall be construed as modifying or limiting the presumption of innocence.").

Given Mr. Scott's strong community ties and history of compliance with pretrial supervision, we believe that the above conditions will reasonably assure his appearance in court and that home detention with electronic monitoring will protect the safety of the community. Thus, we respectfully request that this Court grant our application to release him on bail.

Respectfully submitted,

/s/

Deborah Colson
Colson Law PLLC
(212) 257-6455

cc:   AUSA Alexi Rothman