UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                     :

UNITED STATES OF AMERICA
                                     :

          -v.-                              21 Cr. 429 (AT)

                                     :

WILLIAM SCOTT,
        a/k/a "Ill Will,"                   :

                    Defendant.       :

-------------------------------------------------------------x

## GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS *IN LIMINE*

 

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Courtney Heavey
Alexandra N. Rothman
Assistant United States Attorneys
     *-Of Counsel-*

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 1

ARGUMENT .......................................................................................................... 3

I.    The Court Should Preclude Cross-Examination of the Victim and Witness Regarding Past Arrests and Prior Convictions .......................................................... 3

    A.  Relevant Facts. ....................................................................................... 3

    B.  Relevant Law ........................................................................................... 4

    C.  Discussion. .............................................................................................. 7

II.    The Court Should Admit the Witness's Prior Identification of "Ill Will" as the Shooter Under Rule 801(d)(1)(C) ................................................................... 9

    A.  Relevant Facts ......................................................................................... 9

    B.  Relevant Law ........................................................................................... 9

    C.  Discussion .............................................................................................. 10

III.    The Court Should Admit Surveillance Video Identifications By the Witness and Detective-1 Under Rule 701 ........................................................................... 10

    A.  Relevant Facts ....................................................................................... 10

    B.  Relevant Law ......................................................................................... 11

    C.  Discussion .............................................................................................. 13

IV.    Evidence of the Defendant's Flight from the Bronx is Admissible to Prove Consciousness of Guilt. .................................................................................... 13

    A.  Relevant Facts ....................................................................................... 13

    B.  Relevant Law ......................................................................................... 14

    C.  Discussion .............................................................................................. 16

CONCLUSION ..................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                **Page(s)**

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ................................................................ 6

*United States v. Al-Sadawi*, 432 F.3d 419 (2d Cir. 2005)...................................... 15, 16

*United States v. Agostini*, 280 F. Supp. 2d 260 (S.D.N.Y. 2003) ................................. 8

*United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994). ................................................. 15

*United States v. Arroyo*, 600 F. App'x 11 (2d Cir. 2015)............................................. 12

*United States v. Bautista*, 23 F.3d 726 (2d Cir. 1994) ................................................. 10

*United States v. Brown*, No. 07-Cr-874 (KAM), 2009 WL 497606 (E.D.N.Y. Feb. 26, 2009) ..... 7

*United States v. Devery* 935 F. Supp. 393 (S.D.N.Y. 1996)......................................... 8

*United States v. DiTommaso*, 817 F.2d 201 (2d Cir. 1987)......................................... 10

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) ............................................. 15

*United States v. Garcia*, 413 F.3d 201 (2d Cir. 2005)................................................. 12

*United States v. Gelzer*, 50 F.3d 1133 (2d Cir. 1995)................................................... 15

*United States v. Harvey*, 991 F.2d 981 (2d Cir. 1993) ................................................. 5

*United States v. Hatfield*, 685 F. Supp. 2d 320 (E.D.N.Y. 2010) ............................... 15

*United States v. Hayes*, 553 F.2d 824 (2d Cir. 1977) ................................................... 5

*United States v. Jackson*, 688 F.2d 1121 (7th Cir. 1982) ............................................ 12

*United States v. Johnson*, No. 16-CR-457-1 (NGG), 2017 WL 11490480 (E.D.N.Y. May 24, 2017) ....................................................................................................... 16

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007)................................................. 11

*United States v. Kornegay*, 410 F.3d 89 (1st Cir. 2005).............................................. 12

*United States v. Maldonado-Rivera*, 922 F.2d 934 (2d Cir. 1990).............................. 6

*United States v. Marchand*, 564 F.2d 983 (2d Cir. 1977)............................................ 9

*United States v. Matos-Peralta*, 691 F. Supp. 780 (S.D.N.Y. 1988)........................... 17

*United States v. Owens*, 484 U.S. 554 (1988)............................................................... 9

*United States v. Perez*, 387 F.3d 201 (2d Cir. 2004) ................................................... 16

*United States v. Pirk*, 2019 WL 442449 (W.D.N.Y. Feb. 5, 2019) ............................ 12

*United States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990) .................................... 6

*United States v. San Lazard De La Cruz*, 1985 WL 2342 (S.D.N.Y. Aug. 20, 1985)................... 8

*United States v. Sasso*, 59 F.3d 341 (2d Cir. 1995) ...................................................... 5

*United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) ..................................................... 6

*United States v. Schlussel*, 2009 WL 413605 (S.D.N.Y. Sept. 27, 1996) .................................. 16

*United States v. Simmons*, 923 F.2d 934 (2d Cir. 1991) ................................................... 10

*United States v. Singh*, 628 F.2d 758 (2d Cir. 1980) ..................................................... 6

*United States v. Steele*, 390 F. App'x 6 (2d Cir. 2010) .................................................. 15

*United States v. Suleitopa*, 719 F. App'x 233 (4th Cir. 2018) ............................................ 12

*United States v. Towns*, 913 F.2d 434 (7th Cir. 1990) .................................................... 12

*United States v. Ulbricht*, 79 F. Supp. 3d 466 (S.D.N.Y. 2015) ........................................... 15

*United States v. Vasquez*, 840 F. Supp. 2d 564 (E.D.N.Y. 2011) ......................................... 7, 8

*United States v. White*, 639 F.3d 331 (7th Cir. 2011) .................................................. 12, 13

*United States v. Williams*, 396 F. App'x 516 (10th Cir. 2010) ............................................ 12

## Statutes and Rules

Fed. R. Evid. 401 .......................................................................................... 14
Fed. R. Evid. 403 ....................................................................................... 7, 14
Fed. R. Evid. 608 ........................................................................................... 5
Fed. R. Evid. 609 ........................................................................................... 5
Fed. R. Evid. 611 ........................................................................................... 6
Fed. R. Evid. 701 .......................................................................................... 11
Fed. R. Evid. 801 ........................................................................................... 9

## Other Authorities

4 Weinstein & Berger, Commentary on Rules of Evidence for the United States Courts and
Magistrates 801 (1976) .................................................................................... 9

The Government respectfully submits this memorandum in support of its motions *in limine* in advance of trial against defendant William Scott, a/k/a "Ill Will" (the "defendant"), which is scheduled to begin on December 8, 2021.  The defendant is charged with being a felon in possession of ammunition on June 23, 2020, when the defendant shot at another individual (the "Victim") several times, striking him in the leg, while on a residential street in the Bronx.  The Government moves *in limine*:  (1) to preclude cross-examination of the Victim and a witness to the shooting (the "Witness") on their prior arrests and convictions, none of which are probative of credibility; (2) to admit the Witness's prior identification of the defendant as the shooter under Fed. R. Evid. 801(d)(1)(C); (3) to admit surveillance video identifications of the defendant under Fed. R. Evid. 701 by the Witness and a New York City Police Detective ("Detective-1"), both of whom are familiar with the defendant's appearance; and (4) to admit evidence of the defendant's flight from the Bronx after the shooting as evidence of consciousness of guilt.[1]

## **BACKGROUND**

At trial, the Government expects the evidence will establish that on June 23, 2020, William Scott, a convicted felon, unlawfully possessed ammunition when he shot at the Victim multiple times, striking him in the leg.

In the early afternoon of June 23, 2020, a teenage girl got into an argument with some neighbors, including the defendant, about the girl's dog being off-leash in the apartment's courtyard.  The girl called her father, the Victim, and the Victim later came to the apartment complex where his children, including the teenage girl, were living at the time.

---

[1] Shortly before filing this motion, the Government received material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), for certain law enforcement officers it intends to call at trial. The Government will promptly produce to defense and seeks leave of the Court to supplement its motions *in limine* if necessary.

Video surveillance shows that later that day, on June 23, 2020, the Victim was outside playing with his children, with the Victim's brother and friend nearby, when the defendant and the defendant's daughter came out of the apartment complex and walked to the corner deli. The Victim then walked to the corner deli as well, with his brother and friend following behind.

As captured on surveillance video, both the Victim and defendant proceeded outside where the defendant pulled out a gun. The defendant then fired the gun at the Victim, striking him once, with innocent bystanders nearby.

As also captured on surveillance video, the Victim ran down the street back towards the apartment building, but the defendant chased him down, with his gun drawn. One of the Victim's children tried to protect her father, by standing in front of the Victim, but the defendant pointed the gun at her, and she ran. As four of the Victim's other children looked on from a car parked just a few feet away, the defendant shot at the Victim two more times, hitting him in the leg again. The defendant then fled with his daughter in a car that was waiting for him down the street.

The Victim was thereafter rushed to the hospital, where doctors determined that he had broken his femur and performed surgery to remove a bullet from his leg. Shortly after the shooting, and before being shown any photographs of the defendant or of anyone else, the Witness identified the shooter as "Ill Will" – *i.e.*, the nickname for the defendant – to law enforcement.

Responding officers recovered three shell casings from where the defendant shot at the Victim – one outside the corner deli and two in front of the apartment building. Law enforcement analyzed the ammunition and determined that it was manufactured outside of New York.

On September 5, 2017, the defendant was convicted of a felony – criminal sale of a controlled substance in the third degree, in violation of New York Penal Law Section 220.39.

## ARGUMENT

I. **The Court Should Preclude Cross-Examination of the Victim and Witness Regarding Past Arrests and Prior Convictions**

    A. Relevant Facts

Based on conversations with the Victim, Witness, and a review of law enforcement reports, the Government understands that the Victim and Witness have the following convictions and arrests – all of which the Government seeks to preclude at trial.

    1. The Victim

The Victim has three convictions for narcotics-related offenses.  On January 6, 2004, the Victim was convicted of criminal possession of a narcotic drug in the fourth degree and sentenced to one year imprisonment and six months' suspended license. On November 30, 2005, the Victim was convicted of criminal possession of a controlled substance in the seventh degree, a misdemeanor, and sentenced to conditional discharge and four days' community service.  On October 5, 2011, the Victim was convicted of criminal sale of a controlled substance in the third degree and sentenced to two years' imprisonment and three years' supervised release.[2]

The Victim's other convictions[3] consist of:

- An April 10, 2008 conviction for aggravated unlicensed operation of a motor vehicle in the third degree, a misdemeanor, for which the Victim was sentenced to ten days' imprisonment;

- A February 26, 2010 conviction for resisting arrest, a misdemeanor, for which the Victim was sentenced to conditional discharge;

- An April 9, 2012 conviction for unlawful imprisonment in the second degree, a misdemeanor, for which the Victim was sentenced to a six-month order of protection;

---

[2] The Victim's parole was revoked in connection with this offense on or about July 31, 2013 for curfew violations, which the Government also seeks to exclude.

[3] The Government further seeks to exclude any of the Victim's arrests that did not result in convictions, including any charges that were brought at the same time as the charges that led to the below-described convictions.

- A June 30, 2017 conviction for aggravated unlicensed operation of a motor vehicle in the third degree, a misdemeanor, for which the Victim was sentenced to 15 days' imprisonment.

The Victim has also been arrested on numerous occasions. For example, the Victim was arrested for robberies on or about March 22, 1999 and July 5, 1999; assaults on or about January 18, 2004, March 20, 2006, August 12, 2016, and November 5, 2019; rape on or about May 14, 2006; criminal mischief on or about May 1, 2013; possessing a gravity knife on or about August 2, 2016, and unauthorized use of a motor vehicle on or about September 9, 2020. Finally, the Victim previously associated with a gang and sold crack cocaine until 2011.

### 2. The Witness

The Witness was present at the time of the shooting and will identify the defendant as the shooter based on the Witness's prior interactions with the defendant and observations that day. On November 20, 2012, the Witness was arrested and charged with assault in the third degree. The arrest did not result in a conviction.

### B. Relevant Law

The Federal Rules of Evidence limit the circumstances under which evidence of specific acts of a witness may be introduced into evidence.

### 1. Rule 609

Federal Rule of Evidence 609 sets forth the rubric for impeachment by evidence of a criminal conviction.

With respect to a conviction within the last ten years (or a conviction resulting in confinement within the past ten years), it (1) may be admitted to "attack a witness's character for truthfulness" if the crime was punishable by more than one year's imprisonment, and the admission is not barred by Federal Rule of Evidence 403; and (2) must be admitted for this purpose "for any crime regardless of the punishment . . . if the court can readily determine that establishing the

4

elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a). With respect to the first prong, any cross-examination must satisfy Rule 403—that is, specific instances of a witness's prior conduct may be inquired into on cross-examination only if the probative value of such evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed. R. Evid. 403; *United States v. Sasso*, 59 F.3d 341, 347-48 (2d Cir. 1995). In this context, evidence is unfairly prejudicial if it would invite the jury to decide an issue material to the outcome of the case for reasons that have nothing to do with the factual issues properly before the jury. *See United States* v. *Harvey*, 991 F.2d 981, 996 (2d Cir. 1993). With respect to the second prong, the party "desiring to take advantage of automatic admission of a conviction under the second prong must demonstrate to the court that a particular prior conviction rested on facts warranting the dishonesty or false statement description." *United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977) (internal quotation marks omitted).

Convictions older than ten years are admissible only if: "(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b).

2. <u>Rule 608</u>

Federal Rule of Evidence 608 sets for the rubric for impeachment by evidence of specific instances of past conduct. The rule provides that such instances may be inquired into on cross-examination "if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about." Fed. R. Evid. 608(b). However, the rule precludes the admission of extrinsic evidence to

prove specific instances of a witness's conduct in order to attack the witness's character for truthfulness.  *Id.*

### 3.   Rules 611 and 403

Furthermore, Rule 611 provides that "[c]ross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility," and that the Court should "avoid wasting time" and "protect witnesses from harassment or undue embarrassment."  It is well settled that "[t]he scope and extent of cross-examination lies within the discretion of the trial judge."  *United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) (internal quotation marks omitted).  As the Supreme Court has explained:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination [of a prosecution witness] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (internal quotation marks omitted).  "As long as a defendant's right to confront the witnesses against him is not violated, limitations on cross-examination are not grounds for reversal," *United States v. Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990), and "[t]he decision of the trial court to restrict cross-examination will not be reversed on appeal unless its broad discretion has been abused," *United States v. Maldonado-Rivera*, 922 F.2d 934, 956 (2d Cir. 1990).  "A trial judge does not abuse his discretion by curtailing cross-examination as long as the jury has 'sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government.'"  *Scarpa*, 913 F.2d at 1018 (quoting *United States v. Singh*, 628 F.2d 758, 763 (2d Cir. 1980)).

As described above, evidence, including testimony sought to be elicited on cross-examination, must also satisfy Rule 403, which provides that a court may exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

C.   Discussion

1.   The Defendant Should be Precluded from Cross-Examining the Victim About His Prior Criminal History.

All but three of the Victim's convictions are more than ten years old and thus Rule 609(a) is inapplicable and such convictions do not fall within Rule 609(b) – even assuming *arguendo* that the defendant were to give the Government "written notice of the intent to use [such convictions] so that the [Government] has a fair opportunity to contest [their] use," Fed. R. Evid. 609(b), which the defendant has not done.  None of these crimes bear on the Victim's truthfulness.  That some involved drug dealing, or violent conduct, is of no moment.  *See, e.g.*, *United States v. Vasquez*, 840 F. Supp. 2d 564, 569–70 (E.D.N.Y. 2011) ("convictions for street sales of narcotics, while higher than that for mere drug possession, is still moderately low on the scale of veracity-related crimes, particularly when compared to other drug crimes such as smuggling or conspiracy that are more probative of credibility"); *United States v. Brown*, No. 07-Cr-874 (KAM) 2009 WL 497606, at *3 (E.D.N.Y. Feb. 26, 2009) ("Assaults and murders do not directly reveal truthfulness in the way that forgery, perjury and fraud would").  Nor are there any "specific facts and circumstances" that "substantially outweigh[]" the prejudicial effect of cross-examination of the details underlying these offenses.  Fed. R. Evid. 609(b).  The defendant should accordingly be precluded from eliciting details of these old convictions.

With respect to the Victim's three convictions from the last decade, two are misdemeanors – unlawful imprisonment in the second degree and aggravated unlicensed operation of a motor vehicle – which did not require proving a dishonest act or false statement.  Such convictions are thus inadmissible under Rule 609(a).  The Victim's one felony conviction from the last decade – criminal sale of a controlled substance in the third degree – is inadmissible because it is not probative of the Victim's truthfulness.  *See, e.g.*, *Vasquez*, 840 F. Supp. 2d at 569–70.

For similar reasons, the defendant should be precluded from cross-examining the Victim about prior criminal conduct for which the Victim was not convicted, as such conduct has no bearing on the Victim's truthfulness or any other legitimate line of inquiry.  *See, e.g., United States v. Devery* 935 F. Supp. 393, 408 (S.D.N.Y. 1996) ("[T]he loathsomeness of prior misconduct does not necessarily bear on the perpetrator's capacity for truth-telling."); *see also United States v. San Lazard De La Cruz*, 1985 WL 2342, at *4 (S.D.N.Y. Aug. 20, 1985) ("Alleged sales of narcotics are not probative of truthfulness"); *United States v. Agostini*, 280 F. Supp. 2d 260, 262 (S.D.N.Y. 2003) ("Illegally possessing a firearm is not an example of prior untruthfulness nor is it a crime of deception, and such a conviction does not offer insight into how credible a witness . . . would be.").

> 2.  The Defendant Should be Precluded from Cross-Examining the Witness About the Witness's Prior Criminal History.

The Witness's almost decade-old arrest for assault, which did not result in a conviction, has no bearing on the Witness's truthfulness and no other legitimate line of inquiry, and should therefore be excluded.  In addition, this information is prejudicial, distracting, and would only serve to harass and embarrass the Witness.

II.   **The Court Should Admit the Witness's Prior Identification of "Ill Will" as the Shooter Under Rule 801(d)(1)(C)**

A.   Relevant Facts

As noted above, the Witness was an eyewitness to the shooting.  The Witness was also familiar with the defendant from living in the same apartment building as the defendant for a period of time before the shooting.  Shortly after the shooting, the Witness spoke with law enforcement about what had happened.  Law enforcement officers asked the Witness, in sum in substance, if the Witness knew who the shooter was.  The Witness responded that the shooter's name was "Ill Will."  Afterwards, the officers showed the Witness several photographs, and the Witness selected the defendant's photograph and later signed a printed copy.

B.   Relevant Law

Federal Rule of Evidence 801(d)(1)(C) states that a declarant-witness's prior statement that "identifies a person as someone the declarant perceived earlier" is not hearsay when the declarant testifies and is subject to cross-examination about the prior statement.  The premise of Rule 801(d)(1)(C) is that out-of-court identifications are "generally preferable to courtroom identifications." *United States v. Owens*, 484 U.S. 554, 562 (1988) (holding that identification statements of witnesses are admissible even when the witness is unable to remember the basis for the identification at trial).  The Second Circuit has also held that Rule 801(d)(1)(C) should be "interpreted as allowing evidence of prior identification by the witness of a photograph of the person whom he had initially perceived . . . and also to descriptions and sketches." *United States v. Marchand*, 564 F.2d 983, 996 (2d Cir. 1977) (quoting 4 Weinstein & Berger, Commentary on Rules of Evidence for the United States Courts and Magistrates 801-107 to 108 (1976)).

A prior identification will be excluded "only when it is so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of

law." *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991) (quoting *United States v. DiTommaso*, 817 F.2d 201, 213 (2d Cir. 1987)).  Said another way, a pre-trial identification will be excluded "only if it was *both* produced through an unnecessarily suggestive procedure *and* unreliable." *United States v. Bautista*, 23 F.3d 726, 729 (2d Cir. 1994).

      C.   Discussion

The Witness's prior identification of "Ill Will" as the shooter is admissible under Rule 801(d)(1)(C).  The Government is mindful of the Court's earlier ruling on the defendant's suppression motion, (Dkt. 27), and does not intend to introduce the signed photograph – *i.e.*, the prior identification that the Court deemed suggestive – absent the defense opening the door to its admission in some way.  Rather, the Government simply seeks to elicit from the Witness that, shortly after the shooting, the Witness stated that the shooter was "Ill Will."  The Government anticipates that the Witness will testify at trial, and thus the Witness will be subject to cross-examination.  Moreover, there was nothing suggestive about this identification.  Rather, the Government expects the testimony at trial will be that the Witness said the name "Ill Will" before being shown any photographs.  Therefore, the Witness's prior identification of the defendant should be admitted.

## III.    The Court Should Admit Surveillance Video Identifications by the Witness and Detective-1 Under Rule 701

At trial, the Government intends to present testimony from the Witness and Detective-1, identifying the defendant in surveillance video from the June 23, 2020 shooting, which is admissible under Fed. R. Evid. 701.

      A.   Relevant Facts

The surveillance footage from which the Witness and Detective-1 are expected to identify the defendant, shows the defendant walking down the hall of his apartment building with his young

daughter.  As he walks down the hallway and waits for the elevator, his face is fully visible on the surveillance video.  This footage is captured just moments before the defendant and his daughter can be seen leaving the building and walking towards the corner deli, as described above.

As noted above, the Witness is familiar with the defendant because he was one of the defendant's neighbors at the time of the June 23, 2020 shooting.  The Witness accordingly saw the defendant around the apartment building on numerous occasions prior to the June 23, 2020 shooting.  Detective-1 is also familiar with the defendant because he arrested him in connection with the June 23, 2020 shooting, was involved in booking the defendant after his arrest, and participated in a post-arrest interview of the defendant.  Detective-1 therefore had an extended opportunity to view the defendant's face and body.

B.  Relevant Law

Federal Rule of Evidence 701 states that a non-expert witness may testify in the form of an opinion that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  In interpreting these requirements, the Second Circuit has observed that (a) the "rational-basis requirement" is the "familiar requirement of first-hand knowledge or observation"; (b) the "helpfulness requirement" is "designed to provide assurance[] against the admission of opinions which would merely tell the jury what result to reach"; and (c) the "not based on specialized knowledge" requirement requires that "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." *United States v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007).

Applying Rule 701 to witnesses who can identify a defendant in surveillance video, the Second Circuit and other courts have repeatedly found that these identifications are admissible

when based on a witness's familiarity with the defendant's physical appearance.  In these situations, the witness's lay opinion is helpful to the jury because it is based on "factors that the jury did not possess," such as familiarity with a defendant's "manner of dress, gait, and demeanor" from "several prior encounters."  *United States v. Arroyo*, 600 F. App'x 11, 15 (2d Cir. 2015) (citing *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005)); *see also United States v. Kornegay*, 410 F.3d 89, 95 (1st Cir. 2005) (explaining that identification testimony is helpful to the jury "when the witness possesses sufficient relevant familiarity with the defendant that the jury cannot also possess"); *United States v. Suleitopa*, 719 F. App'x 233, 234-35 (4th Cir. 2018) ("A lay witness may give an opinion concerning the identity of a person depicted in surveillance imagery if there is some basis for concluding that the witness is more likely to correctly identify the defendant from the imagery than is the jury"); *United States v. White*, 639 F.3d 331, 335-336 (7th Cir. 2011) (explaining that even a witness who had met a defendant on "only one occasion" could offer lay opinion testimony about whether the defendant was depicted in a surveillance video (citing *United States v. Jackson*, 688 F.2d 1121, 1126 (7th Cir. 1982)); *United States v. Williams*, 396 F. App'x 516, 519 (10th Cir. 2010) (finding that identification of defendant in surveillance video was admissible where the officer had "a variety of encounters" with the defendant and "would have had an advantage over the jury in identifying her as the perpetrator"); *United States v. Pirk*, 2019 WL 442449, at *2-3 (W.D.N.Y. Feb. 5, 2019) (finding that witness's testimony was admissible because the witness had "viewed the video frame-by-frame" and "reflected his observations" concerning the witness's appearance before and after the charged offenses).  These lay opinions are admissible because there is "some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury."  *White*, 639 F.3d at 336 (quoting *United States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990)).

C.   Discussion

Testimony from Detective-1 and the Witness, identifying the defendant from video surveillance footage is well within the bounds of Rule 701.   These witnesses will testify based on their own perceptions and first-hand knowledge of the defendant.   As described above, each of these witnesses had direct interactions with the defendant that allowed them to personally observe the defendant up-close and personal.   Because the jury will not have similar opportunities to observe the defendant outside of the courtroom, this testimony will be helpful to the jury, and the witnesses are "more likely to correctly identify the defendant from the [video] than is the jury." *White*, 639 F.3d at 336; *see also* Fed. R. Evid. 701(b).   Additionally, the opinions will not be based on any "specialized knowledge."   *See* Fed. R. Evid. 701(c).   Rather, the witnesses will be subject to cross-examination about the number of prior encounters they have had with the defendant, the length of time of these prior encounters, and what factors lead them to believe that the subject in the surveillance video is the defendant.

## IV.   Evidence of the Defendant's Flight from the Bronx is Admissible to Prove Consciousness of Guilt

A.   Relevant Facts

At trial, the Government expects to elicit testimony from Detective-1 that, after a sealed indictment was returned for the defendant on June 30, 2020, Detective-1 was tasked with arresting the defendant.   Detective-1 will testify that, instead of arresting the defendant in the Bronx, where the defendant was living at the time of the shooting, he instead arrested the defendant in Kingston, New York – approximately an hour and forty minutes north of the Bronx – on July 6, 2020.

In addition, the Government expects to introduce several text messages from the defendant's cellphone, seized after his arrest, in which he sent or received messages that bear on

his flight from his apartment in the Bronx after the shooting, and efforts to evade law enforcement apprehension.  These messages include the following, among others:

June 23, 2020, 11:21:59 PM (UTC), Outgoing message: **I need u to bring me the money in the drawer the one we're the TV is at**

June 24, 2020, 4:32:13 PM (UTC): Outgoing message: **Everything good no knocks on the door for anything right**

June 24, 2020, 4:32:53 PM (UTC): Outgoing message: **Sis need a outta town spot asap**

June 24, 2020, 4:56:27 PM (UTC): Outgoing message: **Bet shit went left yesterday**

June 24, 2020, 8:54:05 PM (UTC): Incoming message: **870 Southern Boulevard between Tiffany and Barretto**

June 24, 2020, 8:59:13 PM (UTC): Outgoing message: **Omw**

June 24, 2020 9:57:05 PM (UTC): Outgoing message: **Trust me bro omw had to get the bread and give my daughter her bike this god plan**

June 25, 2020, 2:58:45 PM (UTC): Incoming message: **The defendant received a text message containing a photograph from "Citizen App" that described the shooting and that "police are searching for a male suspect"**

July 7, 2020, 6:12:56 PM (UTC): Outgoing message: **Nah the feds got me**

B. <u>Relevant Law</u>

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Federal Rule of Evidence 403 states, in relevant part, that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of th[e] defendant.  The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue

14

that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)); *see* Advisory Committee's Notes on Rule 403 ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis commonly, though not necessarily, an emotional one.").

 "It is well-settled that flight can, in some circumstances, evidence consciousness of guilt." *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005); *se*e *United States v. Steele*, 390 F. App'x 6, 12 n. 2 (2d Cir. 2010)  ("[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.") (quoting *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977)) (internal quotation marks omitted); *United States v. Ulbricht*, 79 F. Supp. 3d 466, 489 (S.D.N.Y. 2015) (same).  This evidence is admissible, not only under Rule 404(b), but as "direct evidence [of the charge], as it shows consciousness of guilt."  *See United States v. Hatfield*, 685 F. Supp. 2d 320, 327 (E.D.N.Y. 2010).

In order to be admissible, evidence must meet the four-step test set forth in *Al-Sadawi*, which requires that the evidence support four inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." 432 F.3d at 424.  These requirements "ensure[ ] that the evidence is probative in a legal sense and protects the defendant against the possibility of the jury drawing unsupported inferences from otherwise innocuous behavior." *United States v. Amuso*, 21 F.3d 1251, 1258 (2d Cir. 1994).   Evidence of flight, however, is not to be excluded

just because the evidence "might be subject to varying interpretations." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004).

    C.  <u>Discussion</u>

      Here, the evidence of the defendant's desire to flee and ultimate flight within days of the shooting is admissible as direct proof of his consciousness of guilt.  The Court should find the four-step test set forth in *Al-Sadawi* easily satisfied.  On the same day as the shooting and then the following day, the defendant asked for someone to bring him "money," asked if there had been any "knocks on the door," and said he needed an "outta town spot ASAP" – all demonstrating that he thought he was guilty of the shooting and needed to get out of town before the cops came to his door knocking.  The timing of these messages in relation to the shooting, coupled with the fact that the defendant actually received a Citizen App alert, sent from another person, about the shooting, draws the necessary inference that the defendant's flight was because of his consciousness of guilt for the shooting.  Especially in a case where the defendant is likely to deny that he was the shooter, and by extension, deny possession of the shell casings recovered from the scene of the shooting, this circumstantial evidence of the defendant's state-of-mind is incredibly probative and not unfairly prejudicial.  *See United States v. Schlussel*, 2009 WL 413605, at *3 (S.D.N.Y. Sept. 27, 1996) ("Again, a rational jury could further infer that Defendant's misrepresentations and intent to flee reflected his consciousness of guilt.").

      In the alternative, the evidence of the defendant's flight is admissible under Rule 404(b).  The Government first gave written notice of its intent to offer this evidence, in the alternative, under Rule 404(b) on November 28, 2021 – ten days before trial, and fifteen days after the Court's previously set deadline.  *See United States v. Johnson*, No. 16-CR-457-1 (NGG), 2017 WL 11490480, at *3 (E.D.N.Y. May 24, 2017) (holding that "courts in this Circuit have generally

required this notice to be provided ten days to two weeks before trial").   The Government, however, respectfully submits that the Court in its discretion, and consistent with Rule 404(b), can permit the Government to offer this limited and extremely probative evidence at trial.   The Government produced all messages from the defendant's cellphone back in July 2020, and then provided these messages to defense in a more curated list, identifying each message as responsive to the search warrant, on November 5, 2021.   Thus, while the Government's notice was filed after the court's deadline, the defense has been aware of these messages since the beginning of this case. Thus, under the plain language of the Rule, the defense has had "a fair opportunity to meet the evidence."   *See* Rule 404(b), Comm Notes of Rules – 2011 Amendment ("Notice must be provided before trial in such time as to allow the defendant a fair opportunity to meet the evidence, unless the court excuses that requirement upon a showing of good cause."); *see also United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988) (holding that the "Rule itself does not set a "minimum time for action by the government").   In sum, the Court should permit the introduction of this limited evidence under Rule 404(b), if not as direct evidence.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Government's motions *in limine* in their entirety.

Dated:        New York, New York
              November 29, 2021


                                        Respectfully submitted,

                                        DAMIAN WILLIAMS
                                        United States Attorney
                                        Southern District of New York

                              By:       __/s/_____
                                        Courtney Heavey
                                        Alexandra N. Rothman
                                        Assistant United States Attorneys
                                        (212) 637-2580 / 2413