# LAW OFFICES OF SUSAN G. KELLMAN
25 EIGHTH AVENUE • BROOKLYN, NEW YORK 11217
(718) 783-8200 • FAX (718) 783-8226 • SGK@KELLMANESQ.COM
FELLOW, AMERICAN COLLEGE OF TRIAL LAWYERS

March 22, 2022

**BY ECF and ELECTRONIC MAIL**
The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *United States v. William Scott,* 21 Cr. 429 (AT)

Your Honor:

The government's newest supplemental *in limine* offering regarding its ability to authenticate the video recordings, continues the pattern of discovery missteps and violations that have persisted throughout this prosecution.

Last evening the government wrote to the Court, in yet another attempt to justify its offer of video recordings that cannot be properly authenticated. This attempt, too, must fail. The information provided to the Court was inconsistent with the information conveyed to counsel in an earlier conversation. First, the government writes that it intends to offer videos that were collected from 760 E. 183rd St.; however, government counsel previously represented that these same videos were collected from more than one camera – at more than one location – specifically, they proffered that some of the recordings came from a camera or cameras located at 765 E. 183rd St.

Second, the government now represents that its latest witness, Witness-1, "serves as a custodian of surveillance video" – without further explanation. By whom is this "custodian" employed? Under what authority is this custodian responsible for maintaining the videos? Third, and relatedly, the government now represents, for the first time, that this previously unknown "custodian" retained the video(s) for his records – what records? Did he maintain a log in which he indicated when, where and the circumstances under which he obtained these recently recovered videos? Under what obligation does he represent that he retained them for "his records"? And critically, why has it taken two years for the government to produce copies of videos that have allegedly existed for nearly two years?

Fourth, and equally perplexing, is the government's representation that Witness-1 collected the videos and turned them over to NYPD Officers Bermudez and Reynoso contemporaneously, when the government has previously represented that it was the officers who recovered the videos and that Detective Bermudez maintained them in his home for a period

The Honorable Analisa Torres                                              *United States v. Scott,* 21 Cr. 429 (AT)
March 22, 2022

of years – without further explanation. And, parenthetically, Officer Bermudez, who is clearly a critical witness to this conundrum, is alive and well – and yet – the government represents that it intends to call some unknown "Witness-1", rather than a detective who appears to have had significant responsibility for conducting this investigation in the first instance. Without further explanation, the government has affirmatively indicated that it does not intend to call Detective Bermudez who was, in fact, the "custodian" of these videos, in his home, for years – again, without explanation.

Fifth, the government's representation as to the maintenance of the "chain of custody" is insufficient and thus, unsatisfactory. The fact that some heretofore unknown person, appears out of the blue, years after the occurrence and explains that he handed the surveillance videos over to an officer – who: (1) never logged them as having been received by NYPD, (2) never recorded them as evidence in a criminal case – with NYPD; and (3) never lodged them in the department that is responsible for maintaining evidence – completely undermines any notion that the government can establish a legitimate "chain of custody" – without which these videos cannot be properly authenticated.

Sixth, the government represents that it "confirmed" that there are no differences between the copies of the videos that were magically and inexplicitly produced by Witness-1 and the videos that were collected by NYPD Detective Bermudez and Detective Reynoso. The most obvious question is – are the prosecutors in the United States' Attorney Office holding themselves out as video experts. And, more importantly, of what value is their comparison? Do they intend to testify at the trial? Can they explain how certain individuals depicted in the videos appear in several video frames in different places – at the same time? How can their comparisons cure the repeated disclosure violations and the complete failure of any semblance of a "chain of custody" for authenticity purposes?

Finally, your Honor, there are many ways in which these surveillance recording could have been properly preserved so that they could be received in evidence at a trial; however, not a single law enforcement protocol was followed or even attempted here. All the Court now knows is that some unidentified custodian, who is employed by some company, has come out of the shadows, years after an event, a mere two weeks before trial, with video recordings that were never logged either by the custodian or NYPD. The government has not maintained a "chain of custody" – because they have never been able to establish a "chain of custody."

For all of these reasons, and for the reasons cited in our earlier submissions, we urge the Court to find that the videos cannot be properly authenticated and are therefore inadmissible.

Your Honor's attention to this request is greatly appreciated.

Respectfully submitted,

*Susan G. Kellman*
Susan G. Kellman
Eylan Schulman

cc:   All Counsel
      William Scott