UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/2022_____
```

UNITED STATES OF AMERICA,

     -against-

WILLIAM SCOTT,

                    Defendant.

21 Cr. 429 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On July 7, 2020, Defendant, William Scott, was charged with knowingly possessing ammunition as a felon.  No. 20 Cr. 332, ECF No. 1.  On June 28, 2021, the Court determined that the grand jury selection process in that matter violated the Fifth Amendment of the Constitution and dismissed the indictment against Defendant.  No. 20 Cr. 332, ECF No. 40.  That same day, Defendant was reindicted on an identical charge.  *See* No. 21 Cr. 429, ECF No. 1.

Trial in this matter was originally scheduled for December 8, 2021.  No. 21 Cr. 429, ECF No. 32.[1]  On November 29, 2021, the parties filed motions *in limine*.  ECF Nos. 40, 41.  On December 2, the trial was adjourned, ECF No. 45, and, on December 16, Defendant requested a substitution of counsel, and the Court granted this request, ECF No. 49.  Because of the change in counsel, the Court allowed Defendant to file additional motions *in limine*, ECF No. 57, which Defendant filed on February 16, 2022, ECF No. 60.  On March 7, 2022, the Court scheduled trial for April 11, 2022.  ECF No. 64.

Some of Defendant's motions *in limine* ask the Court to preclude the Government from offering into evidence surveillance video footage.  *See* Def. Mem. I. at 17–20, ECF No. 41; Def. Mem. II, at 3–5, ECF No. 60; Def. Mem. III. at 1–2, ECF No. 63.  On March 15, 2022, the

---

[1] Unless otherwise noted, all docket citations are to No. 21 Cr. 429.

parties filed a joint letter asking the Court to resolve Defendant's motions related to the surveillance video because "[t]he Court's ruling on th[ese] motion[s] could significantly impact whether there is a pretrial resolution in this matter." ECF No. 69.  The Court shall, therefore, address Defendant's surveillance video-related motions before reaching the other motions *in limine* filed by both parties.

## BACKGROUND

The charge in Defendant's indictment arises from an alleged shooting that occurred on June 23, 2020, on a residential street in the Bronx.  Def. Mem. I at 1; Gov't. Mem. I at 1, ECF No. 40.  Video surveillance from that day allegedly captures the shooting, as well as the events preceding and following the shooting.  Def. Mem. I at 1–2; Gov't. Mem. I at 2.  On the day after the alleged shooting, Officer Brian Travis collected video footage from nine surveillance cameras in the area.  Gov't Mem. II at 13, ECF No. 61.  Travis provided these videos to Detective Joseph Bermudez, who reviewed them and saved video clips from certain videos into an electronic case management system operated by the New York City Police Department (the "NYPD").  *Id*.  Bermudez also saved the complete version of those videos onto a flash drive (the "Bermudez Drive"), which he kept in his home for over a year.  Def. Mem. II at 4–5; Gov't Mem. II at 13–14.  On that same day, another police officer, Officer Chad Poidomani, also collected videos from one of the buildings in the area.  Gov't Mem. II at 13.

On July 7, 2020, Defendant was charged in this case, No. 20 Cr. 332, ECF No. 1, and, on July 15, 2020, the Government made its first discovery production, which included four of the video clips Bermudez saved to the NYPD case management system and the videos collected by Poidomani.  Gov't Mem. II at 13.  These four clips allegedly show (1) Defendant and his daughter leaving their apartment ("Clip 1"), (2) Defendant and his daughter waiting for and

entering an elevator ("Clip 2"), (3) Defendant and his daughter leaving the elevator and exiting

the lobby of their apartment building ("Clip 3"), and (4) Defendant exiting a gate with his

daughter, walking towards a delicatessen ("the Deli"), chasing a person back to a building ("the

Building"), shooting multiple times at the person, and then running away ("Clip 4"). *Id.* The

Poidomani videos allegedly show (5) Defendant shooting a person in front of the Deli ("Clip 5")

and (6) Defendant and his daughter fleeing in a waiting car ("Clip 6"). *Id.*

On July 15, 2020, Detective Angel Reynoso shared with the Government two additional

videos he had collected from the Building's security camera. *Id.* The first video consisted of

one-and-a-half hours of video from six camera angles around the time of the alleged shooting

("Clip 7"), and the second allegedly showed an earlier altercation between Defendant and a

young woman, which, according to the Government, precipitated the alleged shooting ("Clip 8").

*Id.* Although the Government reviewed and provided Clip 7 to Defendant on July 29, 2020, it

did not review or provide Clip 8 until November 2021. *Id.* at 13–14. The Government claims it

"inadvertently" did not review Clip 8, and that it produced Clip 8 to Defendant as soon as it

realized Clip 8 had not been produced. *Id.* at 14.

During its review of the case file in preparation for the December 8 trial, the Government

"determined that it did not have the Bermudez Drive containing the full-length video." *Id.* The

Government then retrieved the Bermudez Drive from Bermudez and produced its full contents to

Defendant. *Id.* The Bermudez Drive contained five videos that had not previously been

produced to Defendant. *Id.* From this set of videos, the Government intends to introduce one

video ("Clip 9") that allegedly provides a closer view of the shooting than in Clip 4. *Id.*

On March 21, 2022, the Government filed a letter "to provide new and relevant

information" related to the surveillance videos. Gov't Mem. IV at 1, ECF No. 71. The

Government states that an individual known as "Witness-1" serves as "a custodian of surveillance video" at the Building.  *Id*.  According to the Government, although Witness-1 previously provided the surveillance videos from the Building to the NYPD, he separately retained a copy of them, which he provided to the Government on March 21, 2022.  *Id*.  The Government states that there are no differences between the videos provided by Witness-1 and the videos on the Bermudez Drive.  *Id*.  The Government has provided a copy of these videos to Defendant.  *Id*.

## ANALYSIS

### I.      Legal Standard

"The purpose of an *in limine* motion is to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quotation marks and citation omitted).  "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006) (citations omitted).  And, the court's ruling on a motion *in limine* is "subject to change when the case unfolds." *Luce v. United States*, 469 U.S. 38, 41 (1984).  "Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id*. at 41–42.

### II.     Application

Defendant asks the Court to preclude the Government from showing the surveillance video footage (1) because the Government committed discovery violations by failing to produce all of the videos in a timely manner, and (2) because the Government cannot establish a chain of

custody for the videos.  *See* Def. Mem. II at 1.

        A.  Discovery Violations

Under Rule 16, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" video evidence if the evidence "is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant."  Fed. R. Crim. P. 16(a)(1)(E).  And, if the Government "discovers additional evidence . . . before or during trial," it "must promptly disclose its existence" to the defendant or the court.  Fed. R. Crim. P. 16(c).  When the Government has failed to comply with Rule 16, courts have "broad discretion to determine what remedial action, if any, is appropriate."  *United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997); *see also* Fed. R. Crim. P. 16(d)(2).  Courts determining what sanction to impose generally "look to the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances."  *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (citation omitted), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018).

Defendant first raised the issue of the Government's discovery violations in his motion filed on November 29, 2021.  Def. Mem. I at 20–24.  Defendant's concerns focused, primarily, on the limited amount of time he had to review the videos that were produced in November before the trial that was scheduled to be held on December 8, 2021.  *See id.*  Because trial in this matter was adjourned until April 11, 2022, Defendant has had adequate time to review the videos.  The Court, therefore, determines that Defendant will not suffer any undue prejudice as a result of the Government using the surveillance videos at trial, even if the Government's

disclosure was untimely.[2]  Thus, the Court shall not preclude introduction of the videos on this

basis alone.

Accordingly, Defendant's request to preclude the Government from offering the

surveillance videos at trial based on the Government's discovery violations is DENIED.

   B. Authenticity

Under Federal Rule of Evidence 901, to authenticate an item of evidence "the proponent

must produce evidence sufficient to support a finding that the item is what the proponent claims

it is." Fed. R. Evid. 901(a).  To authenticate a video, the Government must demonstrate that "the

events are accurately depicted." *See Boykin v. W. Express, Inc.*, No. 12 Civ. 7428, 2016 WL

8710481, at *5 (S.D.N.Y. Feb. 5, 2016) (emphasis omitted).  The Second Circuit "does not have

a rigid formula for evaluating the authenticity of video tapes, [and] the requisite indicia of

authenticity can be created by presenting witnesses who recall the events depicted, testimony as

to the chain of custody, testimony of the person recording the events, or any other evidence

tending to show the accuracy of the depictions." *Id*.; *see also* Fed. R. Evid. 901(b); *United States

v. Whittingham*, 346 F. App'x 683, 685 (2d Cir. 2009).

The proponent of evidence "need not rule out all possibilities inconsistent with

authenticity, or . . . prove beyond any doubt that the evidence is what it purports to be." *United

States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (quotation marks omitted).  Rather, they must

present "sufficient proof" such that "a reasonable jury could find in favor of authenticity or

identification." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004).  At trial, "the

opposing party remains free to challenge the reliability of the evidence, to minimize its

importance, or to argue alternative interpretations of its meaning, but these and similar other

---

[2] For these same reasons, the Court shall not give an adverse inference instruction based on the Government's failure to timely produce some of the surveillance videos.  *See* Def. Mem. I at 25–26.

challenges go to the *weight* of the evidence—not to its *admissibility*." *Vayner*, 769 F.3d at 131

(quotation marks and citation omitted) (emphasis in original).

Defendant's arguments against the authenticity of the surveillance videos focus on the

Bermudez Drive that was stored in Bermudez's home for seventeen months. *See* Def. Mem. II at

3–5. He contends that the manner in which the videos were stored raises chain-of-custody issues

because "it is impossible to discern how many individuals may have had access to these

recording[s] during the years that they were secreted at Bermudez'[s] home." Def. Mem. III at

1–2. Defendant does not raise chain-of-custody concerns with respect to the storage of the

videos saved in the NYPD case management systems or those collected by Poidomani. The

Government argues that, even if the Court finds Defendant's concerns regarding the Bermudez

Drive persuasive, they would result in the exclusion of only one video, Clip 9, because Clips 1–8

were properly stored. Gov't Mem. III at 3, ECF No. 62. The Government also contends that it

will sufficiently authenticate the videos at trial through the testimony of witnesses, *see id*. at 5,

and that it can authenticate the Bermudez Drive by showing that the videos stored in the case

management system and those provided by Witness-1 are identical to the version of those videos

stored on the Bermudez Drive, *id*. at 5–6; *see also* Gov't Mem. IV.

The Court agrees with the Government that the arguments raised by Defendant do not

call into question the authenticity of all of the surveillance videos. The fact that some of these

videos were stored on the Bermudez Drive, in addition to being stored on the NYPD's case

management system, does not render them any less reliable or authentic. Thus, the Court shall

not preclude the Government from offering Clips 1–8 at trial based on the chain-of-custody

issues Defendant identifies. *See Ozsusamlar*, 428 F. Supp. 2d at 164–65; *Luce*, 469 U.S. at 41.

Furthermore, the Court shall not preclude the Government from offering Clip 9 at this time.  In order to make this determination, the Court requires further information from the Government.  Thus, by **March 25, 2022**, the Government shall provide the Court with the video file stored on the Bermudez Drive and the corresponding Clips from the NYPD case management system.  Along with the video files, the Government shall provide time stamps for when the Clips appear on the video file from the Bermudez Drive.  The Government shall also provide a copy of the video file from Witness-1, and time stamps for when the Clips appear on that video file.

Accordingly, Defendant's motion to preclude the Government from offering Clips 1–8 based on chain-of-custody issues is DENIED, and the Court reserves consideration of Defendant's motion to exclude Clip 9.

## CONCLUSION

For the reasons stated above, Defendant's motion to preclude the Government from offering Clips 1–8 is DENIED.  The Court reserves consideration of Defendant's motion to exclude Clip 9.  By **March 25, 2022**, the Government shall provide the video files as described above.

SO ORDERED.

Dated: March 23, 2022
       New York, New York

_____
ANALISA TORRES
United States District Judge