UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│ USDC SDNY                                │
│ DOCUMENT                                 │
│ ELECTRONICALLY FILED                     │
│ DOC #: _____                 │
│ DATE FILED:  4/5/2022                    │
└─────────────────────────────────────────┘
```

UNITED STATES OF AMERICA,

-against-                          21 Cr. 429 (AT)

WILLIAM SCOTT,                            **<u>ORDER</u>**

                           Defendant.

ANALISA TORRES, District Judge:

Before the Court are the parties' motions *in limine* submitted in anticipation of the trial scheduled for April 11, 2022.  ECF Nos. 40, 41, 60, 62, 66.[1]  Defendant is charged with knowingly possessing ammunition as a felon in connection with a shooting that allegedly occurred on June 23, 2020 (the "June 23 Shooting"), on a residential street in the Bronx. Indictment, ECF No. 1; Def. Mem. I at 1, ECF No. 41; Gov. Mem. I at 1–2, ECF No. 40.

Defendant asks the Court to (1) preclude the Government from referring to Defendant as "Ill Will" and strike "Ill Will" from the indictment; (2) preclude the Government from using the terms "convicted felon," "felon," and "felony"; (3) preclude the Government from referring at trial to the person who was allegedly shot ("Witness A") as a "victim"; (4) preclude the Government from having Witness A and another eyewitness ("Witness B") (together, the "Witnesses") identify Defendant in court; (5) instruct the jury to draw an adverse inference from the Government's alleged disclosure violations; (6) preclude the Government from showing surveillance videos at trial;[2] (7) exclude testimony from a law enforcement officer identifying Defendant on the video footage; (8) preclude the Government from arguing that Defendant

---

[1] The Court notes that the Government filed additional supplemental motions *in limine* on April 1, 2022.  The Court shall address these motions at the final pretrial conference on April 7, 2022.

[2] On March 23, 2022, the Court denied Defendant's motions to preclude the Government from offering certain videos at trial but reserved consideration of the admissibility of Clip 9, one of the videos the Government seeks to admit.  *See* Video Order at 8, ECF No. 73.

attempted to flee, and admitting into evidence text messages allegedly sent from Defendant's phone after the June 23 Shooting; and (9) give a limiting instruction regarding Defendant's prior conviction. *See* Def. Mem. I; Def. Mem. II, ECF No. 60; Def. Mem. III, ECF No. 63; Def. Mem. V, ECF No. 72.

The Government asks the Court to (1) preclude cross-examination of the Witnesses regarding their prior convictions and arrests; (2) admit Witness B's prior identification of Defendant as the shooter; (3) admit a photograph that allegedly shows Defendant in possession of a weapon similar to that used in the June 23 Shooting; and (4) preclude cross-examination of law enforcement witnesses regarding unrelated lawsuits and proceedings. *See* Gov. Mem. I; Gov. Mem. III, ECF No. 62; Gov. Mem. IV, ECF No. 66.

I.   <u>Defendant's Motions</u>

A.   Admission of Defendant's Alleged Alias, "Ill Will"

Defendant asks the Court to preclude the Government and the Witnesses from referring to Defendant by his alleged alias, "Ill Will," arguing that (1) the Witnesses do not appear to know that Defendant is referred to as "Ill Will," (2) references to Defendant as "Ill Will" are irrelevant, and (3) any probative value from the alias is substantially outweighed by the danger of unfair prejudice, misleading the jury, and confusion of the issues. Def. Mem. I at 31–36. Defendant also asks the Court to strike "Ill Will" from the Indictment for similar reasons. *Id*. at 36.

Defendant challenges the Witnesses' personal knowledge of this alias based on Defendant's assessment of the 3500 material, which, Defendant argues "strongly suggests," that Witness A's knowledge is based on hearsay and does not reveal a basis for Witness B's knowledge. *Id*. at 32–33. The Government contends that the Witnesses' testimony on this issue

will provide a basis for their knowing that "Ill Will" is Defendant's alias. Gov. Mem. II at 31, ECF No. 61. At this time, the Court shall not preclude the Witnesses from using Defendant's alias at trial. Defendant has not established that the Witnesses' testimony on this issue "is clearly inadmissible on all potential grounds," *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164– 65 (S.D.N.Y. 2006) (citations omitted), and the Court finds that these concerns can be properly addressed during trial.

Moreover, the Court does not find that Defendant's alleged alias is irrelevant or that its probative value is substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 401, 403. Defendant contends that the "Ill" portion of Defendant's "Ill Will" alias is irrelevant and unduly prejudicial because the Witnesses can refer to him as "Will," a less prejudicial version of this alias. Def. Mem. I at 33–36. The Government argues that the entirety of Defendant's alias is relevant because the Witnesses know Defendant only by his alias and forcing the Witnesses to identify Defendant as "Will" would require them to "substantively change their testimony" rendering it "less natural and fluid[] on a critical issue for trial—whether they know and can identify [D]efendant." Gov. Mem. II at 32. The Government also contends that the Witnesses' knowing Defendant as "Will" is different from their knowing him as "Ill Will," "as the latter connotes a much more specific name and person." *Id*. The Court agrees. Because the Witnesses know Defendant exclusively as "Ill Will," directing them to alter their testimony could create confusion on a key issue at trial. And, the Court finds that the Witnesses' knowledge of Defendant's specific alias lends credibility to their identification of him as the shooter.

Furthermore, the Court does not find that this information's probative value is substantially outweighed by the danger of unfair prejudice. Defendant argues that "Ill" connotes

something negative or potentially "evil or malevolent" about Defendant.  Def. Mem. I at 35–36.

But, in contrast to nicknames like "Murder," "Ill Will" is not necessarily "suggestive of a

criminal disposition."  *See United States v. Alston*, No. 15 Cr. 435, 2016 WL 5806790, at \*8

(S.D.N.Y. Sep. 27, 2016); *see also*, *e.g.*, *United States v. Farmer*, 583 F.3d 131, 135 (2d Cir.

2009).[3]

Finally, the Court sees no basis to strike Defendant's alias from the Indictment.  "Motions

to strike surplusage from an indictment will be granted only where the challenged allegations are

not relevant to the crime charged and are inflammatory and prejudicial."  *United States v.

Mulder*, 273 F.3d 91, 99 (2d Cir. 2001) (citation omitted).  And, "aliases and nicknames should

not be stricken from an Indictment when evidence regarding [them] will be presented to the jury

at trial."  *United States v. Elson*, 968 F. Supp. 900, 909 (S.D.N.Y. 1997); *see also United States

v. Cook*, No. 17 Cr. 65, 2018 WL 2303016, at \*8 (D. Conn. May 21, 2018) (allowing aliases in

the indictment when witnesses only knew the defendant by that alias).

Accordingly, Defendant's motions to preclude use of his alias are DENIED.

B.  Use of the Term "Victim"

Defendant argues that the Government should be precluded from referring at trial to

Witness A, the person allegedly shot by Defendant, as "the victim" because the term is

"irrelevant and unduly prejudicial."  Def. Mem. I at 41–42.  The Government contends that

courts "routinely allow the Government to use the term 'victim' in trials involving violations of

18 U.S.C. § 922(g)" and the "term 'victim' accurately reflects [Witness A's] status under the

Crime Victim Rights Act," 18 U.S.C. § 3771(a)(2)(A).  Gov. Mem. II at 33–34.

---

[3] Because the Court shall allow the Witnesses to refer to Defendant as "Ill Will," the Government shall also be
allowed to use Defendant's nickname as is necessary to elicit and discuss the Witnesses' testimony.  *See Farmer*,
583 F.3d at 146.

Here, the Government's theory of the case is that Defendant shot Witness A, making him the "victim" in the encounter. *Id*. at 34. The Government may reasonably use the term when arguing for its interpretation of the evidence. *See*, *e.g.*, *United States v. Helbrans*, No. 19 Cr. 497, 2021 WL 4778525, at *16–17 (S.D.N.Y. Oct. 12, 2021). And, because the Court shall instruct the jury on the law and elements of the crime charged, there is little risk of jury confusion or prejudice to Defendant from use of the term "victim." Accordingly, Defendant's motion to preclude the Government from referring to Witness A as "the victim" is DENIED.

C.   Use of the Terms "Felony," "Felon," and "Convicted Felon"

Defendant argues that the Government should be precluded from referring to Defendant as a "convicted felon" or a "felon" and from using the term "felony" at trial because these terms would subject him to undue prejudice. Def. Mem. I at 37–38. The Government argues that use of those terms will enable them to "efficiently capture an essential element of the charged offense" and states that it will "use the term[s] sparingly." Gov. Mem. II at 35–36.

Stating that Defendant was "convicted of a felony" is a "much simpler" way of explaining that he "was convicted of a crime carrying a potential sentence of more than one year" and invites less speculation from the jury. *See United States v. Romeo*, No. 19 Cr. 13, ECF No. 28 at 27–29 (S.D.N.Y. May 15, 2019). But, the Court agrees with Defendant that referring to him directly as a "felon" or a "convicted felon" raises concerns of potential prejudice because these terms characterize him as a person rather than merely labeling his prior conduct. *Cf. United States v. Belk*, 346 F.3d 305, 311 (2d Cir. 2003); *United States v. Brooks*, 242 F.3d 368 (2d Cir. 2000). Accordingly, Defendant's motion to preclude the Government from using the terms "felon" or "convicted felon" is GRANTED, and his motion to preclude the Government from using the term "felony" is DENIED.

5

D.  In-Court Identifications

Defendant asks the Court to reconsider its September 9, 2021 order (the "Sept. 2021 Order"), ECF No. 27, resolving Defendant's motion to suppress, and preclude the Witnesses from identifying Defendant in court during the trial.  Def. Mem. I at 4–17.  In the Sept. 2021 Order, the Court held that, although the out-of-court identification process "was unduly suggestive," there was an independently reliable basis for an in-court identification.  Sept. 2021 Order at 3–4.  Defendant contends, however, that new facts demonstrate that the Government's proffers related to the suppression motion "were inaccurate and/or incomplete," and that there is not an independent basis for the reliability of these identifications.  *See* Def. Mem. I at 5.[4] Defendant also argues that the Witnesses should be precluded from identifying Defendant at trial because of the Government's disclosure violations.  *See id.* at 17.

In evaluating if independent reliability exists for an in-court identification when an out-of-court identification has been determined to be impermissibly suggestive, courts consider the factors identified in *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972).  These include:

> (1) a witness's opportunity to view a criminal during the crime, (2) the witness's degree of attention, (3) the accuracy of any prior description of the criminal by the witness, (4) the level of certainty demonstrated by the witness at the time of the confrontation, and (5) the length of time between the crime and the confrontation.

*Wiggins v. Greiner*, 132 F. App'x 861, 864–65 (2d Cir. 2005) (discussing *Biggers*, 409 U.S. at 199–200).

Defendant states that the following facts were not known to him during the briefing on the suppression motion and should persuade the Court to bar any in-court identifications:

1.  Witness B likely overheard an officer refer to a photograph of Defendant as a photograph of the person who was "the subject of the investigation."  Def. Mem. I at 6–7.

---

[4] Neither party asks the Court to revisit its holding relating to the suppression of the out-of-court identification process, *see* Def. Mem. I at 5, Gov. Mem. II at 6, and the Court shall not do so.

2.  Witness B's identification occurred outside, not inside the hospital.  *Id*. at 8.

3.  The body camera footage does not capture Witness B explaining that "Ill Will" was the shooter and her neighbor before she was shown Defendant's picture.  *Id*.

4.  At an interview six days after the shooting, Witness B did not recall what the shooter was wearing and stated that she "believed he was wearing a dark color shirt," when, from video footage, the shooter's shirt appeared to be white.  *Id*. at 8 (citation omitted).

5.  Witness A took ecstasy and may have consumed "several beers" shortly before the shooting.  *Id*. at 14–15.

6.  Witness A's identification occurred minutes after Witness B identified Defendant as the shooter.  *Id*. at 14.

7.  Witness A was not Defendant's neighbor, as the Government proffered.  *Id*. at 15. Rather, Witness A's children lived next door to Defendant and he visited them regularly, seeing Defendant "on numerous occasions," and at times saying "hi" to Defendant.  Gov. Mem. II at 10–11 & 11 n.8; Def. Mem. I, Ex. F;[5] Def. Mem. I, Ex. G (Witness A had seen Defendant "around" prior to the shooting).

8.  Interview notes do not show that Witness A referred to the shooter as "Ill Will" until six days after the shooting.  Def. Mem. I at 15.

These facts do not persuade the Court to depart from its decision to allow the Witnesses to identify Defendant in the courtroom.  The Court permitted Witness B's in-court identification because before she was shown the photographs in a suggestive manner, she viewed the shooter and the shooting in broad daylight, spoke to the shooter from a short distance, and identified the shooter as "Ill Will," a person she was previously familiar with.  Sept. 2021 Order at 4.  These facts remain unchallenged.  Moreover, questions about Witness B's misidentification of the shooter's shirt color six days after the shooting, given the other facts, do not undermine the Court's prior determination that there was an independently reliable basis for Witness B's in-court identification.

---

[5] The exhibits related to these motions were submitted to the Court under seal.

The Court similarly finds that the new facts about Witness A do not change the Court's decision regarding his ability to identify Defendant in court.  To the extent that Defendant contends that Witness A's perception during the shooting may have been altered, that is an appropriate issue to explore during cross-examination and is not a basis for suppression.  *See Dobson v. Walker*, 150 F. App'x 49, 52 (2d Cir. 2005).  Further, although Witness A was not Defendant's neighbor as the Government proffered, Witness A had seen Defendant multiple times prior to the shooting.  *See* Gov. Mem. II at 10–11 & 11 n.8; Def. Mem. I at 15; *cf. Dickerson v. Fogg*, 692 F.2d 238, 245 (2d Cir. 1982).  Next, even if Witness A did not identify Defendant as "Ill Will" prior to being shown a photograph of him, Witness A viewed the shooter in daylight, interacted with Defendant prior to the shooting, and identified him as the shooter soon after the shooting, providing an independent basis for an in-court identification.  *See Wiggins*, 132 F. App'x 861, at 865; *United States v. Donald*, No. 07 Cr. 6208, 2009 WL 960209, at *1 (W.D.N.Y. Apr. 7, 2009).  Therefore, these new facts do not change the Court's prior determination that there is an independently reliable basis for Witness A to provide an in-court identification of Defendant.

Finally, the Court shall not preclude the Witnesses' in-court identifications based on any disclosure violations committed by the Government.  Even if the Government's November 2021 disclosures were untimely, Defendant has had a sufficient opportunity to review and consider that material before his April 2022 trial.  Accordingly, Defendant's motion to preclude the Witnesses from identifying Defendant in court is DENIED.

E.  Adverse Inference

Defendant asks the Court to give an adverse inference instruction to the jury if Witness A is allowed to identify Defendant at trial.  Def. Mem. I at 25–26.  On November 22, 2021, the

Government disclosed that, shortly before the June 23 Shooting, Witness A took ecstasy, a hallucinogenic drug. *Id.* at 2. The proposed instruction reiterates that Witness A had taken ecstasy, states that the Government must inform the defense of any information known to it that casts doubt on its witnesses' credibility, and instructs the jury to infer that the Government delayed in disclosing Witness A's drug use to the defense because this information was damaging to the Government's case. *Id.* at 25.

When the Government has failed to comply with its discovery obligations under Rule 16, courts have "broad discretion to determine what remedial action, if any, is appropriate." *United States v. Miller*, 116 F.3d 641, 681 (2d Cir. 1997); *see also* Fed. R. Crim. P. 16(d)(2). Courts determining what sanction to impose generally "look to the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (citation omitted), *abrogated on other grounds by Carpenter v. United States*, 138 S. Ct. 2206 (2018).

Even assuming the Government unduly delayed in its disclosure of Witness A's drug use, the Court concludes Defendant's proposed instruction is not warranted. Because trial in this matter was adjourned for over four months, Defendant has had adequate time to consider this disclosure. And, Defendant provides no support for his assertion the Government acted in bad faith. Defendant has not, therefore, demonstrated that he will suffer any undue prejudice absent such an instruction.

Accordingly, Defendant's motion for an adverse inference instruction is DENIED.

F. Surveillance Video Footage

On March 23, 2022, the Court denied Defendant's motion to preclude the Government

from offering Clips 1–8 and reserved consideration of Defendant's motion to exclude Clip 9.[6]
Video Order.  The Court asked the Government to provide the video file stored on the Bermudez
Drive and the corresponding Clips from the New York City Police Department ("NYPD") case
management system and the video file from Witness-1 to allow the Court to compare the video
files and determine if the file stored on the Bermudez Drive appeared to be altered.  *Id*. at 8.  The
Court has independently reviewed the videos provided by the Government.

Upon review, the Court concludes that Clip 9 has been properly authenticated.  There are
no visible differences between the files stored on the Bermudez Drive and the other video files.
The Government has, therefore, provided "sufficient proof" such that "a reasonable jury could
find in favor of [Clip 9's] authenticity."  *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir.
2004) (citation omitted).  At trial, Defendant remains free to "challenge the reliability" of Clip 9
and all of the surveillance video footage.  *United States v. Vayner*, 769 F.3d 125, 131 (2d Cir.
2014) (citation omitted).

Accordingly, Defendant's motion to preclude the Government from offering Clip 9 is
DENIED.

> G.  Law Enforcement Identification

At trial, the Government intends to offer the testimony of the arresting officer, Detective
Angel Reynoso, to identify Defendant on the surveillance video footage.  Gov. Mem. II at 23.
Defendant asks the Court to preclude the Government from offering this testimony on the
grounds that it is (1) inadmissible lay opinion testimony and (2) unduly prejudicial.  Def. Mem. I
at 26–31.

Lay opinion testimony is admissible under Federal Rule of Evidence 701 if it is

---

[6] The Court assumes the parties' familiarity with the information contained in the Video Order.

(1) "rationally based on the witness's perception," (2) "helpful" to the jury, and (3) not based on "specialized knowledge within the scope" of expert testimony.  Here, the Government submits that Reynoso will express his opinion that Defendant is the person depicted in the video, and that this opinion is based on his "direct and personal" observations of Defendant during his arrest, which occurred over the course of eight hours spread across two days.  Gov. Mem. II at 23–24.

The Court determines that Reynoso's testimony on this issue is not based on specialized knowledge and that it will be helpful to the jury.  At trial, to the extent that Reynoso relies on his observation of Defendant during the time of his arrest and not "on the entirety of information collected by himself as well as other investigators," his testimony will be rationally grounded in his perception of Defendant and not based on any specialized knowledge.  *Cf. United States v. Mitchell*, 654 F. App'x 21, 25 (2d Cir. 2016).  Moreover, the Court finds that the testimony will be helpful because Reynoso had the opportunity to observe Defendant's gait, facial features, and demeanor for a substantial period of time.  *See United States v. Walker*, 974 F.3d 193, 205 (2d Cir. 2020) (describing a witness testifying about a person's attributes "which were on display in the surveillance video but not at trial"); *United States v. Arroyo*, 600 F. App'x 11, 15 (2d Cir. 2015).

Furthermore, the Court does not find that the probative value of this evidence is substantially outweighed by a danger of unfair prejudice.  Defendant argues that Reynoso's testimony is unduly prejudicial because of the risk that the jury will defer to his knowledge of the case and because his testimony will highlight Defendant's prior contact with the criminal justice system.  Def. Mem. I at 30–31.  The Court disagrees.  Defendant can cross-examine Reynoso regarding his identification of Defendant and, because his testimony is not based on specialized knowledge, there is no reason for the jury to defer to expertise Reynoso may have as a law

enforcement officer.  And, because Reynoso's contact with Defendant stems from his arrest for the charged offense, his testimony would not raise issues related to Defendant's prior interactions with the criminal justice system.

Accordingly, Defendant's motion to preclude the Government from offering Reynoso's testimony on this issue is DENIED.

H.  Text Messages and Evidence of Flight

The Government intends to admit several text messages taken from a phone that was in Defendant's possession at the time of his arrest to demonstrate Defendant's identity as the shooter, his consciousness of guilt, and his alleged flight from the Bronx following the June 23 Shooting.  *See* Gov. Mem. I at 13–17; Gov. Mem. II at 25–28; Gov. Mem. III at 10–17.  The Government also intends to call Reynoso to testify that he arrested Defendant in Kingston, New York on July 7, 2020.  *See* Gov. Mem. III at 7–10.  Defendant asks the Court to preclude the Government from (1) introducing the text messages because they are not relevant and are unfairly prejudicial; (2) offering Reynoso's testimony because the Government failed to timely disclose cell-site location data; and (3) arguing that Defendant fled from the Bronx to Kingston because the evidence will not allow the jury to infer that Defendant's actions are probative of guilt, the probative value of the flight-related evidence will be substantially outweighed by the danger of unfair prejudice, and the Government's disclosure of its intention to raise this argument was untimely.  Def. Mem. I at 38–41; Def. Mem. II at 12–20.  The Court shall address these requests in turn.

The Government intends to introduce a text message in which Defendant allegedly told someone that he was going to give his daughter a bike, which was followed by a photograph of a young girl on a bike.  Gov. Mem. III at 11–12.  The Government seeks to introduce these

messages to show that the young girl appears to be the girl depicted in the surveillance video from the June 23 Shooting, that Defendant had a daughter, and that Defendant used the cell phone from which the messages came.  *Id*. at 11–12.  The Court finds that these messages tend to increase the probability that Defendant is the shooter depicted on the surveillance video and that he used the cell phone, and that they do not present a danger of unfair prejudice.  *See* Fed. R. Evid. 401, 403.

The Government also intends to introduce numerous text messages to demonstrate Defendant's consciousness of guilt and intention to flee.  These messages include a text sent a few hours after the June 23 Shooting in which the sender said he needed the recipient to "bring [him] the money in the drawer," as well as texts from the following day in which the sender asked whether the recipient heard any "knocks on the door" for reasons that needed to be discussed in person, stated that he "need a outta town spot asap," requested an identification document, and expressed that "shit went left yesterday."  Gov. Mem. II at 26–27; Gov. Mem. III at 12–14.  Additionally, the Government seeks to introduce a screenshot of an alert sent to the cell phone on June 25, 2020, that described a shooting that occurred at the location of the June 23 Shooting and informed the recipient that "Police are searching for a male suspect believed to have shot the victim."  Gov. Mem. III at 10, 14–15.  Defendant asserts that these text messages are taken out of context and that "a more careful review of the full threads reveals the messages are not probative of flight and should not be admitted as evidence."  Def. Mem. II at 14.

The Court agrees with the Government that these messages are relevant and are not unfairly prejudicial.  The messages are probative because they show that Defendant began preparing to leave the area after the June 23 Shooting and that he was concerned that the police were looking for him, which makes it more likely that he intended to flee the Bronx and was

conscious of his guilt for the crime charged.  *See United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004).  Moreover, the Court does not find that danger of unfair prejudice substantially outweighs its probative value.  Defendant does not explain why the admission of the messages would be unfairly prejudicial, and the Court concludes that they would not have any substantial adverse effect upon Defendant beyond their tending to prove his intention to flee and his consciousness of guilt.  *See United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013).  Defendant's arguments attributing more innocuous meaning to these messages go to the weight the jury should ascribe to these messages—not their admissibility.  *Cf. United States v. Laster*, 313 F. App'x 369, 373 (2d Cir. 2009).

Next, the Court determines that the Government may offer Reynoso's testimony regarding the location of Defendant's arrest.  Defendant argues that the Government should be precluded from offering this testimony because the officer employed a "highly technical technique to obtain Scott's location" using "cell site simulator" data that it disclosed to the defense in an untimely manner in November 2021.  Def. Mem. II at 13.  Because of this untimely disclosure, Defendant contends that he did not have time to properly analyze the cell-site data and that the Court should, therefore, preclude the Government from "presenting arguments about the location of Scott's arrest."  *Id.* at 13–14.

Again, as discussed above, Defendant has had ample time to review the disclosures made by the Government in November 2021, and the Court shall not preclude the Government from offering evidence on this basis.  Additionally, it is not clear to the Court why the Government's alleged discovery violations would lead to the exclusion of Reynoso's testimony.  The Government does not intend to explain how Reynoso found Defendant; rather, it intends to have Reynoso testify that he arrested Defendant in Kingston, New York on July 7, 2020.  Gov. Mem.

III at 1–2.

Third, the Court concludes that the Government should be permitted to argue that Defendant fled the Bronx following the June 23 Shooting and that his flight is indicative of his consciousness of guilt. "It is well-settled that flight can, in some circumstances, evidence consciousness of guilt." *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) (citation omitted). The "probative value [of evidence of flight] as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *Id*. (citation omitted).

Defendant argues that the Government's showing is deficient because it cannot establish when he traveled to Kingston, "which would be a necessary factual predicate for establishing the *Al-Sadawi* factors." Def. Mem. I at 39. Defendant further contends that the Government cannot demonstrate that Defendant fled because of his consciousness of guilt of the charged crime because Defendant may have been avoiding capture for an alleged state crime that occurred on July 22, 2016. *Id*. at 40. And, Defendant argues that, even if the evidence is probative of guilt, its probative value is substantially outweighed by the danger of unfair prejudice because the "jury would be left to speculate about the timing and reasons" for Defendant being in Kingston. *Id*. at 41.

Here, the Court finds that the evidence allows the jury to draw all four necessary inferences and that the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. A reasonable jury could infer, from the text messages described above and the fact Defendant was arrested in Kingston on July 7, 2020, that Defendant began

making plans to flee the Bronx immediately following the alleged shooting because he knew he committed the crime charged, and that he, in actuality, did flee the Bronx for Kingston.  The probative value of this evidence is strong, and any inferences the jury may draw in favor of Defendant's guilt would follow from the strength of this evidence, and not any improper considerations.  *Cf. Kadir*, 718 F.3d at 122.

Although Defendant is correct that evidence of flight is most compelling when the defendant flees immediately after the commission of the crime, *see United States v. Silverman*, 861 F.2d 571, 582 n.4 (9th Cir. 1988), Defendant provides no support for his contention that the *Al-Sadawi* factors cannot be satisfied without identifying a specific date on which the defendant fled.  Moreover, even if the Court assumes that Defendant left the Bronx on July 7, 2020, fifteen days after the shooting, that would not prevent the Government from satisfying the requirements under *Al-Sadawi*.  *Cf. United States v. Steele*, 390 F. App'x 6, 12 (2d Cir. 2010) (allowing evidence of flight when the defendant fled from the police twenty days after the crime).  Additionally, although it is possible that Defendant left the Bronx in an effort to evade capture for an unrelated 2016 state crime, the timing of the text messages and Defendant's decision to leave the Bronx would allow a reasonable jury to infer that Defendant's actions were precipitated by his participation in the June 23 Shooting, rather than an event occurring four years beforehand.  *Cf. id.* (explaining that, once the evidence "passes the threshold inquiry of relevance," judges should receive the evidence and "permit the defendant to bring in evidence in denial or explanation").

Finally, the Court will not preclude the Government from offering evidence of flight based on a two-week delay in providing its Federal Rule of Evidence 404(b) disclosures because Defendant has had ample time to review the disclosures.

16

Accordingly, Defendant's motions to preclude the Government from admitting the text messages and evidence of flight are DENIED.

I.   Limiting Instruction

Defendant asks the Court to provide a limiting instruction when the stipulation regarding Defendant's prior conviction is entered into evidence.  Def. Mem. I at 43–44.  The Government argues that a limiting instruction in the jury charge would be sufficient.  Gov. Mem. II at 36–37.  The Court agrees with Defendant that the Court should give a limiting instruction when the stipulation is entered into evidence so as to prevent any potential prejudice that could be caused by the jury speculating as to the import of this prior conviction.  The parties shall submit a jointly proposed limiting instruction to the Court by **April 7, 2022**.

Accordingly, Defendant's motion for a limiting instruction as to Defendant's prior conviction is GRANTED.

II.   <u>Government's Motions</u>

A.   Prior Convictions

The Government asks the Court to preclude Defendant from cross-examining the Witnesses regarding all prior convictions and arrests.  Gov. Mem. I at 3–8.  Witness A's prior felony convictions include: (1) a 2004 conviction for narcotics possession and (2) an October 2011 conviction for sale of a controlled substance.  *Id*. at 3.[7]  And, in November 2021, Witness B was arrested and charged with assault in the third degree, but the charge did not result in a conviction.  *Id*. at 4.

Under Federal Rule of Evidence 609, felony convictions that resulted in confinement

---

[7] Witness A also has numerous prior misdemeanor convictions, including for criminal possession of a controlled substance, and multiple arrests, including some for violent crimes, *i.e.*, rape and assault.  Gov. Mem. I at 3–4.  Moreover, Witness A "previously associated with a gang and sold crack cocaine until 2011."  *Id*. at 4.

within the past ten years are required to be admitted to "attack a witness's character for truthfulness," unless they are excluded under Rule 403.  Fed. R. Evid. 609(a)(1).  Convictions older than ten years are only admissible if their "probative value, supported by specific facts and circumstances, substantially outweighs [their] prejudicial effects" and "the proponent gives an adverse party written notice of the intent to use it so that the party has a fair opportunity to contest its use."  *Id.* 609(b).  Moreover, Federal Rule of Evidence 608 provides that specific incidents of past conduct may be inquired into on cross-examination "if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about."  *Id.* 608(b).

Defendant argues that the Court should allow him to cross-examine Witness A regarding his October 2011 felony conviction, a conviction for which he was released from prison less than ten years ago.  Def. Mem. II at 21.  The Government contends that the October 2011 felony conviction is "inadmissible because it is not probative of [Witness A's] truthfulness."  Gov. Mem. I at 8.

The Court agrees with Defendant that Witness A's 2011 felony conviction is admissible. "Rule 609(a)(1) presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully."  *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005). But, courts must "consider the relative probative worth of a witness's specific offenses of conviction . . . in light of the factors listed under Rule 403, when determining whether to admit evidence of those convictions for impeachment purposes."  *Id*.  And, although "all Rule 609(a)(1) felonies are not equally probative of credibility[,] many are significantly probative of a witness's propensity for truthfulness."  *Id*.

The Government has not articulated why the probative value of the October 2011 felony

conviction is substantially outweighed by any of the Rule 403 considerations.  Even though the Government is correct that a conviction for drug selling has a "moderately low impeachment value," *United States v. Vasquez*, 840 F. Supp. 2d 564, 573 (E.D.N.Y. 2011), the Court must presume that it has at least some bearing on Witness A's propensity for truthfulness, *see Estrada*, 430 F.3d at 617; *United States v. Jackson*, No. 19 Cr. 356, 2020 WL 7063566, at *2 (E.D.N.Y. Dec. 2, 2020) (collecting cases).  Furthermore, the Court is not persuaded that introduction of Witness A's 2011 conviction for a relatively low-level drug offense would prejudice the Government by inviting the jury to decide an issue material to the outcome of the case for reasons that have nothing to do with the factual issues properly before it, *cf. United States v. Harvey*, 991 F.2d 981, 996 (2d Cir. 1993), particularly because the jury will likely hear about Witness A's drug use around the time of the June 23 Shooting.

Defendant also asks the Court to reserve decision on all of the other prior convictions and arrests because the Government indicated that it plans to offer immunity to one of the Witnesses, and prior bad acts may potentially be relevant to his cross-examination of that witness with regard to that offer of immunity. Def. Mem. III at 23–24.  The Court agrees with Defendant that, if the Government offers one of the Witnesses immunity for their commission of a prior bad act, Defendant should be allowed to question that witness regarding the commission of the prior bad act because the nature and severity of that behavior may have bearing on the witness's motivation to testify.  The Court shall address the admissibility of the relevant prior bad acts and convictions if this issue arises during trial.

Defendant also argues that, if Witness A denies using ecstasy around the time of the shooting, his prior drug crime convictions would be probative of his drug use. Def. Mem. III at 24–25.  The Court shall also address the admissibility of these convictions if necessary.

Accordingly, the Government's motion to preclude Defendant from cross-examining the Witnesses about their prior arrests and convictions is GRANTED as to all arrests and convictions except for Witness A's October 2011 felony, and DENIED as to the October 2011 felony.  The Court reserves the right to reconsider its decision during trial if prior arrests and convictions are relevant for specific impeachment purposes.

### B.  Prior Identification

The Government asks the Court to permit it to elicit from Witness B that she identified the shooter as "Ill Will" prior to being shown Defendant's photograph.  Gov. Mem. I at 9–10; *see also* Fed. R. Evid. 801(d)(1)(C).  Defendant argues that the Court should preclude the Government from offering this testimony because (1) the Court already determined that the identification process that includes Witness B's statement was tainted by the unduly suggestive photo array and (2) body camera footage does not show Witness B identifying the shooter as "Ill Will" prior to being shown the photo array.  Def. Mem. II at 5–9.

The Court disagrees with Defendant's characterization of the Sept. 2021 Order. Although the Court found that the photo identification process was unduly suggestive, it did not determine whether Witness B's statements prior to being shown the photographs were admissible.  *See* Sept. 2021 Order at 3–4.  Thus, the Court does not find that the Government's request "flies directly in the face of the Court's prior determination."  Def. Mem. II at 5.  The Court also concludes that a statement made before the unduly suggestive photo array is admissible because it is not tainted by the faulty procedures employed after it was made.  *Cf. United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991).  Moreover, the Court determines that this prior identification is admissible even if it was not captured on the police officer's body

camera recordings.[8]  Defendant is free to challenge the testimony regarding the prior

identification at trial.

Accordingly, the Government's motion to allow Witness B to testify that she previously

identified the shooter as "Ill Will" before being shown the photo array is GRANTED.  But, the

Government may not elicit from Witness B any testimony related to the out-of-court photograph

identification process.

C.  Photograph

The Government seeks to admit a photograph that allegedly depicts Defendant in a face

mask with a black semi-automatic pistol that was "taken less than two weeks after the June 2020

shooting" and sent via a text message on July 4, 2020 from the cellphone seized from Defendant

on the date of his arrest.  Gov. Mem. IV at 1–3, ECF No. 70.  Defendant contends that the Court

should preclude the Government from introducing the photograph because it is unduly

prejudicial based on the uncertainty around whether the man in the photograph is Defendant,

when the image was taken, and whether the gun is the same gun depicted in the video of the June

23 Shooting, as well as the fact that the photograph appears to show marijuana and that

Defendant is charged with possession of ammunition and not possession of a weapon.  Def.

Mem. IV at 1–3.  Defendant also argues that the photograph is inadmissible as evidence of

another bad act under Federal Rule of Evidence 404(b).  *Id*.

Here, the Court finds that the photograph is admissible.  The jury is capable of

determining whether the photograph depicts Defendant and assessing whether the gun looks

similar to the gun shown in the surveillance video without "wildly speculating."  *Id*. at 1–2.  The

Court also concludes that this evidence is not prohibited under Rule 404(b) because it is being

---

[8] The Court also rejects Defendant's challenge related to Witness B's mistake regarding the shooter's shirt color.
*See* Def. Mem. II at 8; *supra* I.D.

admitted to prove Defendant's identity as the shooter of gun in the video.  And, the Court

determines that the probative value of this picture, taken two weeks after the shooting, is not

substantially outweighed by a danger of unfair prejudice.  *Arroyo*, 600 F. App'x at 13–14.  The

fact that the picture depicts a gun, as opposed to ammunition, is not prejudicial because

Defendant is charged with possessing ammunition fired from a gun.  *Cf. United States v. Taylor*,

No. 05-3384, 2006 WL 1069545, at *1 (8th Cir. Apr. 24, 2006) (evidence of gun possession is

"simply additional proof" of knowingly possessing ammunition).  Additionally, the potential

presence of marijuana does not raise a danger of unfair prejudice because of the relatively

limited stigma associated with the use and possession of this drug.

Accordingly, the Government's motion to admit the photograph is GRANTED.

D.  Lawsuits and Disciplinary Proceedings

The Government asks the Court to preclude Defendant from cross-examining law

enforcement witnesses about their involvement in civil lawsuits or investigations conducted by

the New York City's Civilian Complaint Review Board ("CCRB") and the NYPD.  Gov. Mem.

IV at 4–10.  Defendant argues that he should be allowed to question Reynoso, the arresting

officer who will be asked to identify Defendant on the surveillance video, about a CCRB

determination in which he was found to have obtained a reduced insurance premium by not

updating his car's registration address and two civil lawsuits in which he was accused of

falsifying information and providing false testimony, which were subsequently settled for an

undisclosed amount of money.  Def. Mem. IV. at 3–5.  Defendant also contends that he should

be allowed to question Sergeant Hubert Vandewerp, who is expected to testify about responding

to the crime scene and the vouchering of the shell casing, about a civil lawsuit in which he was

accused of falsifying reports and information given to prosecutors, which was settled for

$15,000.  *Id*. at 5.  But, Defendant makes no arguments related to the remainder of the proceedings and investigations discussed by the Government.

The Court agrees with Defendant that cross-examination of these witnesses with respect to these four proceedings is proper because they involve forms of dishonesty and bear on the witnesses' credibility.  *See*, *e.g.*, *United States v. Horsford*, 422 F. App'x 29, at * 1 (2d Cir. 2011).  Thus, such cross-examination is a permissible form of impeachment.

Accordingly, the Government's motion to preclude Defendant from cross-examining Reynoso and Vandewerp about the CCRB determination and the three civil lawsuits is DENIED, and its motion to preclude Defendant from cross-examining law enforcement witnesses about other investigations and lawsuits is GRANTED.

### E.  Limiting the Scope of Cross-Examination

The Government asks the Court to limit Defendant's cross-examination of Reynoso to the subject matter of his direct examination and matters affecting his credibility.  Although the Court agrees that the cross-examination of Reynoso should comply with the requirements of Federal Rule of Evidence 611(b), the Court does not find any reason to rule on this issue before trial. Any concerns about the scope of Defendant's cross-examination can be properly addressed during Reynoso's testimony.

Accordingly, the Government's motion to limit Defendant's cross-examination of Reynoso is DENIED.

## CONCLUSION

For the reasons stated above, the Court issues the following rulings on the parties' motions *in limine*:

1.  Defendant's motions to preclude the Government and its witnesses from referring to

Defendant as "Ill Will" and to strike "Ill Will" from the Indictment are DENIED;

2.  Defendant's motion to preclude the Government from referring to Witness A as "the victim" is DENIED;

3.  Defendant's motion to preclude the Government from using the terms "felon" and "convicted felon" to describe Defendant at trial is GRANTED, and Defendant's motion to preclude the Government from using the term "felony" is DENIED;

4.  Defendant's motion to preclude the Witnesses from identifying Defendant in court is DENIED;

5.  Defendant's motion for an adverse inference instruction related to the Government's disclosure of Witness A's drug use is DENIED;

6.  Defendant's motion to preclude the Government from offering Clip 9 at trial is DENIED;

7.  Defendant's motion to preclude the Government from offering Reynoso's testimony to identify Defendant on the surveillance video is DENIED;

8.  Defendant's motions to preclude the Government from admitting text messages sent after the shooting and evidence of flight are DENIED;

9.  Defendant's motion for the Court to give a limiting instruction after the stipulation regarding Defendant's prior conviction is entered into evidence is GRANTED, and the parties shall submit a jointly proposed limiting instruction to the Court by **April 7, 2022**;

10. The Government's motion to preclude Defendant from cross-examining the Witnesses about their prior arrests and convictions is DENIED as to Witness A's October 2011 felony and otherwise GRANTED;

11. The Government's motion to admit Witness B's prior identification of the shooter as "Ill

Will" is GRANTED;

12. The Government's motion to admit the photograph is GRANTED;

13. The Government's motion to preclude Defendant from cross-examining Reynoso and Vandewerp about the CCRB determination and the three civil lawsuits is DENIED, and its motion to preclude Defendant from cross-examining law enforcement witnesses about other investigations and lawsuits is GRANTED; and

14. The Government's motion to limit Defendant's cross-examination of Reynoso is DENIED.

SO ORDERED.

Dated: April 5, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge