

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 10, 2022

**BY CM/ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
Daniel P. Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:   *United States v. William Scott*, 21 Cr. 429 (AT)

Dear Judge Torres:

    The Government respectfully submits this opposition to Defendant William Scott's supplemental motion *in limine* seeking to preclude evidence that a civilian eyewitness to the shooting ("Witness B") previously sold small quantities of ecstasy to the defendant on a regular basis (Docket No. 86).  For the following reasons, the Government respectfully submits that this testimony is admissible under Federal Rules of Evidence 404(b) and 403.  Additionally, the Government opposes the defendant's motion seeking to cross-examine Witness B about Witness B's ecstasy dealing, while prohibiting Witness B from disclosing that such dealing included the defendant.  The Government respectfully submits that any cross-examination regarding Witness B's sale of ecstasy be limited exclusively to Witness B's sale of ecstasy to the defendant.  Questions about Witness B's sale of ecstasy to other individuals should be precluded under Rule 403.

### FACTUAL BACKGROUND

    The Government anticipates that Witness B will testify that Witness B was previously next-door neighbors with the defendant for approximately six to twelve months in advance of the shooting on June 23, 2020 (the "June 2020 Shooting").  Witness B will testify that one of the ways Witness B is particularly familiar with the defendant—as opposed to other neighbors who live in the large high-rise apartment building—is because Witness B sold ecstasy pills to the defendant on a weekly basis and sometimes multiple times a week.  Witness B's sale of ecstasy to the defendant not only explains their relationship and Witness B's knowledge of and familiarity with the defendant, but it is also the reason that Witness B had the defendant's phone number saved in her phone.[1]  And Witness B used the defendant's phone number to communicate with him about the ecstasy deals.  The defendant would then meet face-to-face with Witness B to purchase the

---

[1] Whether the defendant used the phone that law enforcement obtained in connection with the defendant's arrest, is another issue that we expect will be raised at trial.

Hon. Analisa Torres										Page 2
April 10, 2022

ecstasy. Witness B will testify that one of the ways Witness B knew who committed the June 2020 Shooting was because of Witness B's familiarity with the defendant from these regular, face-to-face, transactions involving ecstasy. Witness B has indicated that Witness B will invoke the Fifth Amendment privilege against self-incrimination if asked how Witness B knew the defendant, because a truthful answer to that question would require Witness B to disclose Witness B's sale of ecstasy to the defendant.

The Government also anticipates that Witness B will testify that Witness B met with law enforcement agents to discuss the June 2020 Shooting on several occasions. During these meetings, the Government asked Witness B about Witness B's relationship with the defendant. Witness B did not disclose that Witness B sold ecstasy to the defendant until a meeting approximately two weeks before trial. During previous meetings, the Government had not asked Witness B about Witness B's involvement in drug dealing or her involvement in any other uncharged criminal activities.

## APPLICABLE LAW

Federal Rule of Evidence 404(b) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Second Circuit "ha[s] adopted an inclusionary approach to evaluating Rule 404(b) evidence, which allows evidence to be received at trial for any purpose other than to attempt to demonstrate the defendant's criminal propensity." *United States v. Edwards*, 342 F.3d 168 (2d Cir. 2003) (internal quotation marks and citations omitted).

The Second Circuit follows an "inclusionary approach" under which "prior act evidence is admissible 'for any purpose other than to show a defendant's criminal propensity.'" *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017) (quoting *United States v. Mejia*, 545 F.3d 179, 206 (2d Cir. 2008)). It is well settled that other act evidence is admissible under Rule 404(b) "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed." *United States v. Williams*, 205 F.3d 23, 33-34 (2d Cir. 2000) (citing *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992)); *see also United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (citing *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)).

Finally, when a testifying witness was a participant in these prior acts, the Government is also entitled to "elicit testimony during direct examination that exposed details damaging to their credibility." *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991). In doing so, the Government is "able to avoid the appearance that it was concealing impeachment evidence from the jury." *Id.* (citing *United States v. Louis*, 814 F.2d 852, 856 (2d Cir. 1987); *see also United States v. Hamilton*, 3 F. App'x 7, 11 (2d Cir. 2001) (same); *United States v. Escalera*, 536 F. App'x 27, 33 (2d Cir. 2013) (same); *United States v. Brady*, 26 F.3d 282, 289 (2d Cir. 1994) (same).

Hon. Analisa Torres                                                                                                            Page 3
April 10, 2022

      While prior-acts evidence is subject to the balancing test set forth in Federal Rule of Evidence 403, the Second Circuit has long made clear that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial. *Roldan-Zapata*, 916 F.2d at 804; *see also United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) ("[T]he evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction."); *Paulino*, 445 F.3d at 223 (finding no Rule 403 violation where prior conviction was not more inflammatory than the charged crime, the government did not place improper emphasis on the prior conviction, and the district court provided a limiting instruction); *cf. Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair."); *United States v. Everett*, 825 F.2d 658, 660-61 (2d Cir. 1987) ("Under Rule 404(b) evidence of 'other crimes' has been consistently held admissible to corroborate crucial prosecution testimony." (internal citations omitted)).

## DISCUSSION

### I. Witness B Should Be Permitted to Testify about Witness B's Relationship with the Defendant

      Applying the principles set forth above, Witness B's testimony regarding sales of small quantities of ecstasy to the defendant on a regular basis leading up to the June 2020 Shooting is clearly admissible. One of the key disputed issues at trial will be whether Witness B correctly identified the defendant as the shooter. Witness B only saw the shooter for several seconds after the shooting began, and so the jury will be asked to make determinations about the reliability of Witness B's identification. A complete factual narrative regarding the nature of Witness B's relationship with the defendant, the frequency of their face-to-face interactions, and the nature of these face-to-face interactions are all critical facts for the jury to weigh in making this determination. The defendant suggests that he will not dispute that Witness B knows the defendant, and that they saw each other regularly because they were next-door neighbors. But the jury is entitled to understand that Witness B and the defendant were not just next-door neighbors who passed each other in the hallways of a large apartment building on occasion. Rather, Witness B saw the defendant on a weekly basis, face-to-face, to supply him with ecstasy, and the specific details of that relationship are important to explaining Witness B's close relationship with the defendant. The Government is in no way offering the evidence of these drug transactions as propensity evidence. Quite to the contrary, the evidence is highly probative of Witness B's relationship with the defendant, and Witness B's ability to confidently identify him as the shooter, despite the fact that Witness B was face-to-face with the shooter for only a brief period of time during the shooting. Put simply, the jury is entitled to fully understand all of the reasons why Witness B has become so familiar with the defendant and is able to identify him as the shooter.

      Similarly, the defendant has argued that he is entitled to impeach Witness B's credibility by suggesting that Witness B failed to disclose this drug dealing to the Government until just a few weeks before trial. But any such cross-examination that does not allow Witness B to explain that such drug dealing was with the defendant will leave a misimpression. Witness B was not asked any questions about her drug dealing in earlier meetings with the Government, and thus her failure to tell the Government that she sold ecstasy to other people is not a proper basis for impeachment. Rather, the only possible impeachment relates to the fact that Witness B was asked

on multiple occasions about her relationship with the defendant. In response to these questions, Witness B failed to disclose that a significant part of Witness B's interactions with the defendant was through the sale of ecstasy. Once the Government learned this information and began asking Witness B about Witness B's general involvement in the sale of ecstasy, Witness B truthfully answered questions posed by the Government. As a result, the jury is entitled to understand the true scope of Witness B's failures to volunteer information about her sale of ecstasy to the defendant in weighing her credibility.

Finally, the proposed evidence is also admissible under Rule 403. As described above, the probative value of this evidence is extremely high, especially given that Witness B's identification of the defendant as the shooter in the June 2020 will be an important issue for the jury to assess at trial. Meanwhile, the possibility of any unfair prejudice to the defendant is minimal. The defendant is already charged here with a serious crime that involved a non-fatal shooting in the middle of a residential neighborhood that resulted in a 38-year old man being shot in the leg. Additionally, the jury will also know that the defendant was previously convicted of a felony. Any additional prejudice from being a low-level user of ecstasy pills is practically non-existent. *See Roldan-Zapata*, 916 F.2d at 804 (holding that "other act" evidence that is neither "more sensational" nor "more disturbing" than the charged crimes will not be deemed unfairly prejudicial).

## II. The Defendant Should Be Precluded from Cross-Examining Witness B about Sales of Ecstasy to Other Customers

As described above, the Government respectfully submits that Witness B should be allowed to testify about Witness B's regular sales of ecstasy to the defendant leading up to the June 2020 Shooting. To the extent that Witness B can be impeached regarding the late disclosure of this information to the Government, the Government also respectfully submits that Witness B should be allowed to explain that the failure to disclose this information came in response to questions about Witness B's relationship with the defendant, not simply a failure to disclose that she sold ecstasy.

The defendant suggests in his motion that he also should be entitled to cross-examine Witness B about Witness B's participation in the sale of ecstasy more broadly. The Government respectfully submits that such cross-examination should be precluded under Rule 403. Courts have found that low-level drug dealing—like the type of drug dealing by Witness B—is not highly probative of a witness's character for truthfulness. *See, e.g.*, *United States v. Vasquez*, 740 F. Supp. 2d 564, 569-70 (E.D.N.Y. 2011) (explaining that "convictions for street sales of narcotics, while higher than that for mere drug possession, is still moderately low on the scale of veracity-related crimes, particularly when compared to other drug crimes such as smuggling or conspiracy that are more probative of credibility"). The probative value here of cross-examining Witness B regarding Witness B's participation in the sale of ecstasy to other customers is even lower here, where the Government is already proposing to inform the jury that Witness B sold ecstasy to the defendant. Additionally, to the Government's knowledge, Witness B has truthfully answered all questions directly posed to Witness B regarding Witness B's drug dealing. As mentioned above, the only arguable impeachment of Witness B here is Witness B's failure to disclose Witness B's sale of ecstasy to the defendant when asked about Witness B's relationship to the defendant.

Hon. Analisa Torres                                                                                                          Page 5
April 10, 2022

      Finally, the defense's position here—that the defendant should be entitled to cross-examine Witness B about Witness B's drug dealing, without any evidence of Witness B's sale of drugs to the defendant—is fundamentally unfair and misleading to the jury. To the extent that Witness B will be cross-examined about her drug dealing at trial, Witness B should be entitled to explain that one of Witness B's customers was the defendant, which allowed Witness B to become very familiar with him.

## CONCLUSION

      For these reasons, the Government respectfully requests that the Court deny the defendant's supplemental motion *in limine* to preclude evidence of Witness B's sale of ecstasy to the defendant.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    /s/
       Courtney Heavey / Andrew K. Chan
       Assistant United States Attorneys
       Southern District of New York
       (212) 637-2413 / 1072

cc:    Counsel of record (by CM/ECF)