```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

                v.

WILLIAM SCOTT,

                        Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/16/2022_

21 Cr. 429 (AT)

**ORDER**

ANALISA TORRES, District Judge:

On June 28, 2021, a Manhattan grand jury issued a one-count indictment (the "Indictment"), charging Defendant, William Scott, with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Indictment, ECF No. 1. Trial commenced on April 11, 2022, 4/11/2022 Dkt. Entry, and on April 14, 2022, the jury found Defendant guilty, 4/14/2022 Dkt. Entry. Defendant moves under Federal Rule of Criminal Procedure 29(c) for a judgment of acquittal arguing that there was not sufficient evidence to sustain his conviction. *See* Def. Mot., ECF No. 99. For the reasons stated below, Defendant's motion is DENIED.

## BACKGROUND

The charge in the June 28, 2021 Indictment arose from a shooting that occurred on June 23, 2020, shortly after 6:10 p.m., in the Bronx. Tr. I at 70:25–73:1, ECF No. 91. As a result of this shooting, Dequan Hunt (the "Victim") sustained a gunshot wound to his leg for which he received treatment at a nearby hospital. Tr. II at 171:22–24, 220:15–221:1, ECF No. 93.

On April 11, 2022, the Court empaneled a jury and began trial. Tr. I at 9:16–19. The Government presented its evidence over the course of three days. To establish Defendant's identity as the shooter, the Government introduced a series of surveillance videos, witness

testimony, and text messages sent to and from a phone seized from Defendant on the day of his arrest.[1]

First, the Government introduced surveillance videos recorded on June 23, 2020, shortly before 6:00 p.m., which show a man and a young girl leaving an apartment, waiting for an elevator, and exiting the building on East 183rd Street minutes before the shooting. Tr. I at 59:23–25, 62:23–63:2, 69:11–13; GX 401-A–E, G. The man was wearing a white shirt and red shorts with a white stripe (the "Red Shorts Man"), and the young girl was wearing a white shirt and blue jeans. Tr. I at 62:23–63:2. Another video shows the Red Shorts Man and the young girl crossing the street and walking toward the corner of East 183rd Street and Prospect Avenue, where the man got into an argument with the Victim and two other men. *See id.* at 72:7–24; GX 401-G, 402-A, C. During this argument, the Red Shorts Man pulled out a gun from his pocket and fired at the Victim. GX 402-C. When the Victim ran down the street towards the apartment building, the Red Shorts Man followed him. Tr. II at 215:17–19; GX 401-F–G. The video then shows the Red Shorts Man shoot at the Victim two more times in front of the apartment building, with other people, including children, in close proximity. Tr. II at 199:16–18, 201:4–8, 215:17–19; GX 401-F–G. Another camera shows the young girl running from the corner of East 183rd Street and Prospect Avenue, alone, watching the shooting in front of the apartment building. Tr. I at 78:10–12; GX 402-A. After being confronted by a woman, the Red Shorts Man ran back towards the corner of East 183rd Street and Prospect Avenue, got into a car with the young girl, and drove away. GX 402-C.

---

[1] Both parties stipulated and agreed that, as of June 23, 2020, Defendant "knew that he had been previously convicted in a court of the United States or any state of a crime punishable by imprisonment for a term exceeding one year." Tr. III at 562:14–563:5, ECF No. 95.

Along with the videos, the Government introduced the testimony of Carmen Esquilin, who lived in a building adjacent to Defendant's and is the maternal aunt of Defendant's child. Tr. III at 537:3–538:16, ECF No. 95. Upon viewing the surveillance footage, she stated that the Red Shorts Man was Defendant, and the young girl accompanying him was his daughter. *Id.* at 540:10–19. The Government also introduced eyewitness testimony from Lynette Philip, the mother of the Victim's children, who was present at the shooting. Tr. II at 171:22–172:1. During the shooting, Philip approached the shooter face-to-face and pleaded with him to stop shooting, at which point the shooter ceased firing his weapon and left the scene. *Id.* at 204:15–206:1. As shots were being fired, Philip heard the young girl scream, "Daddy, no. Daddy, stop. Daddy, don't do it." *Id.* at 201:9–16, 204:9–12. Since 2019, Philip had known Defendant as her next-door neighbor and had interacted with him face-to-face "[e]very other day or every other week" to sell him ecstasy. *Id.* at 175:16–176:8. When asked to identify the shooter in the courtroom, Philip pointed to Defendant. *Id.* at 172:6–17.

In addition to the video evidence and witness testimony, the Government also presented evidence from a cell phone recovered from Defendant during his arrest. Tr. III at 482:14–19, 544:3–12. This phone had previously received an incoming text message from TD Bank addressed to Defendant by name. *Id.* at 549:3–8. Additionally, the password to unlock the phone included Defendant's daughter's name. *Id.* at 483:11–16. On the day after the shooting, the phone sent outgoing text messages stating, "Bet shit went left yesterday" and "Sis need a outta town spot ASAP." *Id.* at 550:11–551:1. Two days after the shooting, the phone received an incoming text message stating, "u got beef William," which was followed by a screenshot of an alert describing the shooting. *Id.* at 557:25–558:21. The Government also introduced

3

evidence that Defendant was eventually arrested in Kingston, New York, approximately 100 miles away from his apartment building and the location of the shooting. *Id.* at 481:18–23.

The Government also introduced evidence showing that three PMC .380 caliber shell casings were recovered from the scene and connected those shell casings to Defendant as the shooter. Police Officer Nicole Krauss, who responded to the shooting, testified that, on June 23, 2020, at approximately 6:45 p.m., she began setting up crime scene tape to secure the scene. *Id.* at 356:2–6, 364:12–22. Police Sergeant Hubert Vandewerp, who arrived at the scene at approximately 8:20 p.m., testified that officers found three shell casings from two different locations that matched those of the shooting—one from the corner of East 183rd Street and Prospect Avenue, and two from in front of the apartment building on East 183rd Street. Tr. II at 282:23–283:7, 285:22–25, 286:5–19, 294:1–295:4, 299:7–300:2. Vandewerp identified these casings as belonging to .380 caliber bullets manufactured by PMC. *Id.* at 294:20–24, 304:1–6. Detective Michael Caridi—who was qualified by the Court as an expert in the field of ballistics, *see* Tr. III at 406:24–407:2—examined the three PMC .380 shell casings and stated that they were fired from the same gun, *id.* at 427:5–14. Caridi also examined a bullet removed from the Victim's leg after the shooting,[2] and described it as having a full metal jacket and weighing 90.3 grains. *Id.* at 444:1–7, 446:13–16. The Government then introduced a PMC product catalog that stated that PMC .380 caliber ammunition has a full metal jacket and weighs 90 grains. *Id.* at 476:24–477:4. Special Agent Matthew Sansone—who was qualified by the Court as an expert in

---

[2] After this bullet was removed from the Victim's leg, a property clerk invoice was prepared to voucher the physical evidence. Tr. III at 399:16–400:1. This property clerk invoice indicated that the bullet came from Plainfield Machine Company, Tr. II at 331:3–6, whereas the shell casings were confirmed by Caridi and Special Agent Matthew Sansone to be manufactured by Precision Made Cartridges, Tr. III at 426:16–19, 472:25–473:6. However, Caridi also testified that in his experience, there is "no way to determine if the bullet itself has a certain manufacturer. There[] [are] no manufacturer markings on a bullet to make that determination." *Id.* at 459:17–25. Sansone also testified that, to his knowledge, Plainfield Machine Company does not manufacture ammunition. *Id.* at 477:11–14.

the identification of the movement of firearms and ammunition through interstate commerce, *see id*. at 472:4–10—confirmed that these casings were manufactured by PMC in either South Korea or Texas, *id*. at 472:25–473:11.

In his defense, Defendant introduced footage from the surveillance videos showing another man wearing a white shirt and red shorts exiting the apartment building shortly after the people identified as Defendant and his daughter. Tr. II at 115:9–18. Defendant also pointed to video footage showing a man with a blue shirt standing near the exit of the apartment building holding what appeared to be a long rifle. *Id.* at 110:8–111:18. And, he discussed video footage from after the shooting that showed a man wearing a maroon shirt—identified as the Victim's brother, *see id.* at 209:4–6, 217:8–218:17—grabbing a handgun from a car on East 183rd Street and running toward Prospect Avenue after the shooting, *id.* at 118:18–24, 152:2–11. But, video footage did not show any of these other individuals fire a weapon. Defendant also introduced video footage showing that, after police arrived at the scene of the shooting, several pedestrians, an individual riding an electric scooter, and three dogs passed through the crime scene before the scene was secured. *Id.* at 126:23–127:19, 129:2–15, 130:7–131:18.

At the close of the Government's case, Defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a) arguing that there was insufficient evidence to sustain a conviction. Tr. III at 580:3–5. The Court denied the motion. *Id*. After the defense rested, Defendant renewed his motion under Federal Rule of Criminal Procedure 29(b), and the Court, again, denied his motion. Tr. IV at 617:2–4, ECF. No. 97. And, after the jury found Defendant guilty, Defendant moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) and requested thirty days to brief this motion. Tr. IV at 723:20–21. The Court granted Defendant the opportunity to file briefing within thirty days of the verdict.

*Id.* at 723:20–724:10.  On May 12, 2022, Defendant filed a letter "inform[ing] the Court of his intention to rely on the arguments advanced at trial and following the jury verdict . . . in support of his application for a judgment of acquittal pursuant to Rule 29(c)."  Def. Letter, ECF No. 99.

## DISCUSSION

I.  Legal Standard

On a Rule 29 motion made after a verdict has been reached, the evidence at trial must be "viewed in a light that is most favorable to the government, and with all reasonable inferences resolved in favor of the government."  *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008) (quotation marks, citations, and alterations omitted).  A defendant challenging the sufficiency of the evidence "bears a heavy burden," *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (citation omitted), and a court should only grant such a motion if it "concludes there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt," *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (quotation marks and citation omitted). "[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal."  *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003); s*ee also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  And, the jury's verdict must be upheld as long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Aguiar*, 737 F.3d at 264 (citation omitted) (emphasis in original).

II.  Application

The Indictment charges Defendant with violating 18 U.S.C. § 922(g)(1), *i.e.*, "knowing he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly [possessing] ammunition . . . which had previously been shipped and

transported in interstate [or] foreign commerce." Indictment; *see also* 18 U.S.C. § 922(g)(1). The Court shall address each element of the offense in turn, as well as the appropriateness of venue.

      A.  Previous Felony Conviction

The Court finds that the evidence at trial was sufficient for a reasonable jury to conclude that Defendant knew of his previous felony conviction. Both parties stipulated that, as of June 23, 2020, Defendant "knew that he had been previously convicted in a court of the United States or any state of a crime punishable by imprisonment for a term exceeding one year." Tr. III at 562:14–563:5. Thus, "any rational trier of fact" would have found this essential element of the crime beyond a reasonable doubt. *Aguiar*, 737 F.3d at 264 (citation and emphasis omitted).

      B.  Possession of Ammunition

A rational jury could have also found beyond a reasonable doubt that Defendant possessed ammunition on or around June 23, 2020. First, based on the surveillance video footage, witness testimony, and cell phone evidence, a reasonable jury could have concluded that Defendant committed a shooting at East 183rd Street on June 23, 2020. *See, e.g.*, Tr. I at 59:23–25, 62:23–63:2, 69:11–13, 72:7–24, 78:10–12; Tr. II at 171:22–172:17, 175:16–176:8, 199:16–18, 201:4–16, 204:9–206:1, 215:17–19; Tr. III at 481:18–23, 482:14–19, 483:11–16, 537:3–538:16, 540:10–19, 544:3–12, 549:3–8, 550:11–551:1, 557:25–558:21; GX 401-A–G, 402-A, C. Although Defendant pointed to other individuals on the surveillance footage who could have been the source of the ammunition found on scene, *see* Tr. II at 110:8–111:18, 115:9–18, 118:18–24, 152:2–11, this evidence, at most, could lead to competing inferences about the identity of the shooter, and the Court "must be careful to avoid usurping the role of the jury . . . to choose among competing inferences that can be drawn from the evidence." *Jackson*, 335 F.3d

at 180 (citations omitted). The evidence indicated that Defendant was the shooter, and a reasonable jury could certainly have reached that conclusion.

Second, a reasonable jury could have concluded that the three PMC .380 caliber shell casings found at the scene were from the weapon Defendant used during the shooting. Law enforcement witnesses testified that three shell casings were recovered from the locations of the three shots Defendant fired, that they were all fired from the same weapon, and that they matched the bullet pulled from the Victim's leg. *See*, *e.g.*, Tr. II at 282:23–283:7, 285:22–25, 286:5–19, 294:1–295:4, 299:7–300:2, 304:1–6; Tr. III at 427:5–14, 444:1–7, 446:13–16, 472:25–473:11, 476:24–477:4. Although Defendant raised concerns about traffic at the scene before it was secured, *see* Tr. II at 126:23–127:19, 129:2–15, 130:7–131:18, these concerns do not overcome the strong evidence indicating that Defendant was the source of the shell casings found on June 23, 2020. Viewing the evidence in the light most favorable to the Government, *see Eppolito*, 543 F.3d at 45, the Court finds that a reasonable jury could have found that the three casings recovered at the scene were from the shooting committed by Defendant.

C. Ammunition Shipped & Transported in Interstate or Foreign Commerce

The Court also finds that there was sufficient evidence for a reasonable jury to conclude that the ammunition used in the shooting was shipped and transported in interstate or foreign commerce. Sansone, who was qualified by the Court as an expert in the identification of the movement of firearms and ammunition through interstate commerce, *see* Tr. III at 472:4–10, testified that the casings recovered at the crime scene came from ammunition manufactured in either South Korea or Texas, *see* Tr. III at 472:25–473:11. Because these casings were found at a crime scene in New York, a rational trier of fact could have found beyond a reasonable doubt that the ammunition was shipped and transported in either interstate or foreign commerce.

D.  Venue

The Court also finds sufficient evidence for a reasonable jury to conclude that venue was appropriate in the Southern District of New York.  Under Federal Rule of Criminal Procedure 18, "the government must prosecute an offense in a district where the offense was committed."  It is undisputed that the shooting took place in the Bronx, which is within the Southern District of New York.  *See* Tr. I at 70:25–73:1, 300:3–301:17; Tr. III at 498:4–7; 28 U.S.C. § 112(b).

Furthermore, "[o]bjections to venue are waived unless specifically articulated in defense counsel's motion for acquittal."  *United States v. Potamitis*, 739 F.2d 784, 791 (2d Cir. 1984) (quotation marks and citation omitted).  Defendant has not raised any challenges to venue in his motion, *see* Def. Letter; Tr. III at 580:3–5; Tr. IV at 617:2–4, 723:20–21, so the Court need not consider this issue.

## CONCLUSION

For the reasons stated above, Defendant's motion is DENIED.

SO ORDERED.

Dated: August 16, 2022
New York, New York

_____
ANALISA TORRES
United States District Judge